# Henry McKinnie et al., Plffs. in Err., *v.* Winnie Kilgallon.

In an action for damages for an injury occurring on a freight elevator in a hotel, it appeared that the plaintiff, a scrubbing girl, was obliged to use

Note.—For the standard of safety required in appliances furnished by employers, see note to Drew v. Gaylord Coal Co. 2 Sad. Rep. 340.

As to liability for injury to elevator passenger, see the presentation of the authorities in editorial note to Mitchell v. Marker, 25 L. R. A. 33. As to liability of landlord for injuries caused by elevator, see editorial note to Jones v. Millsaps, 23 L. R. A. 155. As to accidents at shafts of elevator, see editorial note to Gordon v. Cummings, 9 L. R. A. 640.

the elevator when working; that the elevator was a movable platform with iron guards on the sides which did not reach to the floor but left space enough for a foot to pass under them; that it tilted and jarred, and at times would suddenly fall; that at the time of the accident it had swayed to one side and tilted over, and the plaintiff was thrown down and her foot passed under the guard and was caught and injured. *Held*, that the evidence was sufficient to show that the elevator was not fitted for the safe transportation of human beings, and that the defendants were liable.

(Argued October 25, 1887.   Decided November 7, 1887.)

October Term, 1887, No. 41, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to Common Pleas No. 2 of Allegheny County to review a judgment in favor of the plaintiff in an action on the case to recover damages for personal injuries.   Affirmed.

This action was brought by Winnie Kilgallon against Henry McKinnie and Edward L. Bean, trading as McKinnie & Bean and proprietors of the Anderson hotel in the city of Pittsburgh, to recover damages for injuries caused by an accident on the elevator of the hotel.   The hotel was leased by the defendants from Joseph N. Anderson.   They took possession in June, 1885, before which time the elevator had been placed in the building.   The elevator was built for freight, but the plaintiff, a scrubbing girl, was required to use it when going from floor to floor, except when she was off work or dressed in clean clothes.   The elevator as originally constructed was a simple movable platform without guards or inclosure and with vacant spaces between it and the walls and openings of the wall.   Subsequently iron guards were placed on two sides and a gate on the third side.

The plaintiff testified that at the time of the accident "the elevator turned to one side; and when it did it took the big trunk in the center of the elevator, and the trunk fell over and held me there.   I pulled the trunk over when I fell, to catch myself. . . .   The elevator turned to one side, lopsided, and just as I got in the door, there was the trunk in the center of the elevator; and when I seen the elevator turn to one side I grabbed at the trunk to save myself and my foot caught out between this wire and this gate that was on the elevator.   I guess the gate was about 4 feet high.   It did not come down to the platform

of the elevator; there was about ½ foot that it did not come level."

Speaking of the gate she said: "There was some kind of a gate around it, it kept us from catching our clothes on the side of wire. The portion that was closed was open through the wires—the openings were not very big—they were not big enough to get my foot through except underneath."

"I was standing at the time, there were no seats provided in the elevator. The jar threw me off my feet; the elevator when it turned over threw me off my feet and I grabbed the trunk to save myself and the trunk held me there."

"I fell over against the wire gate; I had hold of the trunk all the time; I caught it to catch myself; I fell down beside the trunk; I fell flat on the floor; the moment that the elevator jarred to the side I went down immediately."

"Sometimes the elevator worked smoothly; some other times it would not—it turned to one side and joggled back and forward; sometimes it pulled the rope and stopped a little while, and then it would get to going again."

"It used always to turn lopsided; sometimes it would turn from one side to another."

*Q.* Just describe what the motion was.

*A.* When the man would pull the rope it would go a little while till it would stop again; and it might fall down at the same time when we wanted to go up.

*Q.* This lopsided motion—what do you mean by that?

*A.* It would catch at one side of the walls and the other side would turn like.

The plaintiff's foot was so badly injured that amputation was necessary.

Two other accidents had previously happened upon the elevator, and the testimony of other witnesses showed that it "tilted" and "jarred," and at times had fallen eight or ten feet when the rope had been pulled too far in starting. The guards did not reach the floor and there was space enough for a foot to pass under them.

The defendants presented, *inter alia,* the following points:

9. That if the defendants leased the property from Mr. Anderson with the elevator in it, and the elevator was put up by a contractor of competent skill, and was in itself reasonably

safe or without a defect that was so plain that the defendants should have known of it, they are not responsible—they are not responsible for any defect in the original construction of the machinery; and if the accident occurred by reason of any such defect they would not be responsible and the verdict should be for the defendants.

*Ans.* Refused. First assignment of error.

8. The evidence in this case would not justify the jury in finding that the plaintiff was thrown from her feet by the tilting of the elevator before the accident happened.

*Ans.* Refused. Second assignment of error.

12. There is no evidence in this case to justify the jury in finding that there was any such defect in the machinery complained of as should have been known by the defendants.

*Ans.* Refused. Third assignment of error.

1. That under all the evidence in this case the plaintiff is not entitled to recover and the verdict should be for the defendants.

*Ans.* Refused. Fourth assignment of error.

Verdict and judgment for plaintiff for $2,441.66.

*J. F. Slagle,* for plaintiffs in error.—Our ninth point should have been affirmed on the authority of Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 191, 36 Am. Rep. 662, and Ardesco Oil Co. v. Gilson, 63 Pa. 150.

In an action by an employee against his employer for injuries sustained by the former in the course of his employment from defective appliances, the presumption is that the appliances are not defective; and when it is shown that they were, then there is a further presumption that the employer had no notice or knowledge of the fact and was not negligently ignorant of it. Thomp. Neg. 1050–1053; Wharton, Neg. § 428; Shearm. & Redf. Neg. § 12; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 191, 36 Am. Rep. 662; Baker v. Allegheny Valley R. Co. 95 Pa. 211, 40 Am. Rep. 634; Jennings v. Pennsylvania R. Co. 93 Pa. 337, and Reading & C. R. Co. v. Latshaw, 93 Pa. 449.

This is but the application to this class of cases of the familiar rule that the burden of proof of negligence is on the plaintiff.

This presumption is not overcome by proof of the happening of the accident. Gramlich v. Wurst, 86 Pa. 78, 27 Am. Rep. 684; Jennings v. Pennsylvania R. 93 Pa. 337, and Reading

& C. R. Co. v. Latshaw, 93 Pa. 449; Baker v. Fehr, 97 Pa. 71.

A common carrier is not bound to provide absolute protection against accidents. Wharton, Neg. § 361; Pittsburgh & C. R. Co. v. McClurg, 56 Pa. 294.

An employer is not bound to furnish for workmen the safest machinery, nor to provide the best methods for its operation, in order to save himself from responsibiltiy for accidents resulting from its use. Ardesco Oil Co. v. Gilson, 63 Pa. 150; Pittsburgh & C. R. Co. v. Sentmeyer, 92 Pa. 276, 37 Am. Rep. 684; Philadelphia & R. R. Co. v. Schertle, 97 Pa. 450.

*A. V. D. Watterson* and *A. M. Brown,* for defendant in error.—The law applicable to the circumstances of this case, and applied by the learned judge below, will be found in Patterson v. Pittsburg & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412; Oakbridge Coal Co. v. Reed, 5 W. N. C. 3; Mullan v. Philadelphia & S. Mail S. S. Co. 78 Pa. 25, 21 Am. Rep. 2; American S. S. Co. v. Landreth, 108 Pa. 264; Johnson v. Bruner, 61 Pa. 58, 100 Am. Dec. 613; Baker v. Allegheny Valley R. Co. 95 Pa. 211, 40 Am. Rep. 634; Beach, Contrib. Neg. § 110, p. 331; Wharton, Neg. §§ 210-222.

PER CURIAM:

None of the assignments of error in this case can be sustained. The evidence was properly submitted to the jury, and that body found that the elevator was not fitted for the safe transportation of human beings; in this they were warranted by the evidence, and we, therefore, approve both verdict and judgment.

Judgment affirmed.