BELL PAYNTER, DEFENDANT IN ERROR, v. THE BRIDGETON AND MILLVILLE TRACTION COMPANY, PLAINTIFF IN ERROR.

Submitted March 25, 1902.—Decided June 16, 1902.

1. A mere fall from a street car without any evidence to show how the fall was occasioned raises no presumption of negligence on the part of the operators of the car.
2. The doctrine of *res ipsa loquitur* is applicable only when the thing shown speaks of the negligence of the defendant, not merely of the happening of the accident.

On error to the Supreme Court.

For the plaintiff in error, *Joseph H. Gaskill.*

For the defendant in error, *Walter H. Bacon.*

The opinion of the court was delivered by

GARRETSON, J. The plaintiff brought suit against the defendant to recover damages for personal injuries alleged to

have been caused by the negligence of the defendant. A ver-
dict was rendered for the plaintiff.

The plaintiff was a passenger upon the defendant's trolley
car. She testifies that, as she neared her destination, she
heard the bell ring for the car to stop; she looked up to see
if the conductor rang for her, and he bowed to indicate that
he did, and she arose to leave the car; she waited a moment
for the car to stop; she waited a moment, when she arose,
and then stood on the threshold of the car until it had fully
stopped—that is, as she says, in the doorway, inside, in the
body of the car—before she stepped on the platform; while
she stood there she turned and smiled good-night to two
ladies in the car, and after that she stepped on the platform
and was about to alight, and while she was in the act of
alighting she was thrown to the ground; that she did not
reach the ground standing upright on both her feet; that
the first she knew she was on her feet, and someone was hold-
ing her up; that she did not know who picked her up; it
must have been either Mr. Laning (a passenger and witness
in the case) or the conductor; both were beside her when
she regained consciousness; that she did not get off the car
in safety and then fall down; that she did not get off the
car in safety and her ankle turn under her. In response to a
question, "What was it that caused you to become separated
from the car?" she answers, "I thought the car——," when
she was stopped from further answering by objection.

On cross-examination she testifies that she remembered the
car stopping while she was on her feet, after she arose from
her seat, and it came to a full stop before she went on the plat-
form; and her cross-examination then proceeds as follows:

"Q. There was nothing in the motion of the car at the
time you got up out of your seat or the time you reached
the back door and stepped on the platform that attracted
your attention?

"A. Anything that attracted my attention?

"Q. Yes; in the motion of the car?

"A. I can't say that there was particularly.

"*Q.* Now, the car did not start again until after you had fallen, did it?

"*A.* I am not allowed to say what I think.

"*Q.* No; you are not allowed to say what you think, but only what you remember; what you know.

"*A.* I remember stepping out on the platform.

"*Q.* Yes, but pardon me [former question repeated].

"*A.* I think it did.

"*Q.* Are you positive?

"*A.* Well, I was so soon unconscious.

"*Q.* Before you became unconscious, can you say that the car started from the time you got up out of your seat up to the time that you found yourself on the ground?

"*A.* I believe it did.

"*Q.* I didn't ask you what you believed; I asked you if you say that the car started?

"*A.* Well, I can only answer you what I have already said.

"*Q.* Well, you are unable to say that the car started, are you not; you can't say that the car started?

"*A.* I think the car started.

"*Q.* But you can't say that it did start?

"*A.* I can only answer you as I have.

"*Q.* You don't remember it starting—put it that way?

"A. I am afraid I don't remember much that occurred just then.

"*Q.* You don't remember the car starting at any time after you left your seat and at once come to a stop, do you—I am asking for your recollection now?

"*A.* Well, whether it is recollection or whether it is feeling, it seems to me the car started.

"*Q.* Do you say that you distinctly recollect the car starting after you had left your seat and before you found yourself on the ground?

"*A.* I don't know; I really don't positively know; I had a feeling; something threw me; I don't know what.

"*Q.* You don't remember any sudden jar or jolt of the car, do you?

"*A.* Just at that time?

"*Q.* Yes; after you had left your seat and before you found yourself on the ground?

"*A.* I didn't find myself on the ground; I was so quickly removed, my memory was so quickly taken from me, that I can't answer that.

"*Q.* Well, to the time you fell on the ground?

"*A.* I can't answer to the time I fell on the ground.

"*Q.* I say you can't remember any sudden jolt or jar or sudden motion of the car from the time you left your seat up to the time you became unconscious, you say?

"*A.* I have no recollection of anything, except that I was in the act of alighting from the car and the next I knew is someone had picked me up.

"*Q.* And as you were in the act of alighting from the car, which you distinctly remember, you don't associate with it any recollection of any motion or jar or jolt of the car?

"*A.* I have no distinct associations.

"*Q.* Did you fall on your back?

"*A.* I don't know, sir; I have been told that I fell on my back."

Isaac Laning, who was a passenger in the car and was called as a witness on the part of the plaintiff, testifies that he saw the plaintiff when she arose to leave the car; that he arose and followed right after her; that she went out of the car on the platform; that he was only a few steps behind her; that he saw her after she had left the car; she was then on the ground, lying flat on her back, with her head in the direction towards the front of the car, and the car slightly past her; that when he left his seat in the car and started towards the exit the car was then in motion; that when he got to the platform he don't know whether it had stopped; that the car, as a matter of course, started after he left, and it was moving as he approached the door, but when it stopped he could not tell. He says, on cross-examination, that, so far as he recollects, the plaintiff, from the time she got up, kept in motion, walking, until he saw her on the ground; that he does not know whether the car had stopped before she attempted to get off; that he has no recollection of the car

coming to a standstill before she got off; that he was not conscious of any act excepting walking and coming to the front of the door, seeing the plaintiff on the ground and jumping to pick her up; that he had no recollection whatever of any starting of the car 'which caused the fall; that when he saw her on the ground she was lying flat upon her back, with her head toward the front of the car; that the rear platform, when the car stopped, had passed her head slightly as she lay on the ground on her back; there was only one stopping of the car and one starting—after it stopped it did not start again until after the plaintiff was picked up and the conductor got back again in the car, and then they resumed their journey; that he was not conscious, when the car stopped, of its stopping with any unusual or peculiar jolt or jerk or jar or lurch.

Mrs. Carpenter, a passenger and witness for the plaintiff, testifies that after the plaintiff got up, and as she was going towards the door, the car stopped; that she thought, when the plaintiff passed out on the platform, the car had stopped; that the car stopped quite a long time, and she heard them ask if someone was hurt.

On cross-examination she says that when the plaintiff arose the car was in motion, but she stopped a second in front of the witness, and then started towards the door, but it had stopped by that time; that after the plaintiff got up and started to go out she does not remember whether the car started again until after she heard someone say, "Are you hurt?" Then she has no recollection of the car starting again until it started to move again on to where she was going; that she is sure the car stopped before the plaintiff got on the platform; that she only remembers of the car stopping once; that she don't remember whether, when it stopped, it stopped smoothly and quietly; that she don't recall any jerk or lurch or jar, or remember any unusual movement or motion of any kind there that evening at all like a jerk or jar or a sudden start or sudden stop.

The mere happening of the accident is not sufficient to place legal responsibility for its effects upon the defendant.

There is no evidence on the part of the plaintiff showing how the accident happened. She herself says that she has no recollection of anything except that she was in the act of alighting from the car, and the next she knew was someone picked her up. There is nothing in her testimony, nor in that of her witnesses, nor in the attendant circumstances to show how it happened that she fell; she merely has a belief, a thought, a feeling, a seeming to her that the car started, but when pressed to say whether she remembers any sudden jolt or jar or sudden motion of the car, she says, "I have no recollection of anything except that I was in the act of alighting from the car, and the next I knew someone picked me up." Surely there is no proof in this testimony that the fall was occasioned by the sudden or any other starting of the car from a state of rest, or by any unusual motion, jerk, jar or jolt of the car which the defendant was called upon to explain. In *Hansen* v. *North Jersey Street Railway Co.,* 35 *Vroom* 686, the court reversed a judgment on a verdict directed for the defendant on the ground that the facts proved might justify a jury in inferring negligence on the part of the defendant.

In *Whalen* v. *Consolidated Traction Co.,* 32 *Vroom* 606, it was testified that the plaintiff was pulled off the runboard of the car by the conductor.

In *Fielders* v. *North Jersey Street Railway Co., ante p.* 76, the plaintiff was injured by stepping into a hole in the street, which it was claimed the defendant should have repaired.

In *Consolidated Traction Co.* v. *Thalheimer,* 30 *Vroom* 474, the evidence was that the plaintiff was thrown from the platform of the car by a sudden lurch or jerk.

In *Scott* v. *Bergen County Traction Co.,* 34 *Vroom* 407; *affirmed,* 35 *Id.* 362, a lurch forward of the car while the plaintiff was alighting was proved.

In *Bliss* v. *Bergen County Traction Co.,* 35 *Vroom* 601, injury was caused to an employe by wrong signals.

In *Fenig* v. *North Jersey Street Railway Co.,* 35 *Vroom*

715, the car was started when the plaintiff had one foot on the ground and the other on the car.

In *Camden and Atlantic Railroad Co.* v. *William,* 32 *Vroom* 646, the car was started suddenly while the deceased was alighting at a crossing where a stop had been made.

In *Foley* v. *Brunswick Traction Co.,* 50 *Atl. Rep.* 340, the case turned upon the question of the liability of the company for the condition of the street where the car stopped for a passenger to alight.

In all these cases facts were proved of acts by the employes of the company, or of movements of the cars or appliances of the company, from which the jury might infer negligence, but in this case no such facts appear in the evidence.

The mere happening of the accident raised no presumption of the negligence of the defendant. It was necessary to show, by direct evidence, that the defendant was responsible for the accident, or to show the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant, and would exclude the idea that it was due to a cause with which the defendant was unconnected. *Suburban Electric Co.* v. *Nugent,* 29 *Vroom* 658; *Houston* v. *Traphagen,* 18 *Id.* 23; *Benedict* v. *Potts,* 41 *L. R. A.* 478.

A fall while alighting from a street car is not such a fact, standing alone, as to authorize the application of the doctrine of *res ipsa loquitur.*

The thing that happened in no way can be said to prove that the defendant was negligent.

The only thing proved was the fall. Nothing was proved causing the fall, or any circumstances which could be in anyway said to show that the defendant was negligent.

If it had been proved that a jerk or jolt of the car had produced the fall, that fact, unexplained, might be said to prove the defendant's negligence, although the defendant might furnish an explanation of it which would relieve from responsibility.

These principles are very fully discussed in the case of

*Benedict* v. *Potts, supra,* by Chief Justice McSherry, of the Maryland Court of Appeals.

The application for a nonsuit at the close of the plaintiff's case should have been granted.

This determination renders it unnecessary to consider other errors assigned upon exceptions taken to the refusal to direct a verdict for the defendant to portions of the charge of the court, and to the refusal of the court to charge the several requests of the defendant.

The judgment below will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, PITNEY, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM.    14.