J. F. MONAGHAN, Administrator, Appellant, v. EQUITABLE LIFE INSURANCE COMPANY OF IOWA, Appellee.

**CARRIERS:** Non-Applicability of Res Ipsa Loquitur. The narrow allegation "that a passenger, while exercising due care, was, by some negligent condition or movement of a passenger elevator, thrown to the floor thereof in such manner as to fatally and instantly cause death," must be supported by evidence *other than that the passenger fell while in the elevator and was found dead*, before the doctrine of *res ipsa loquitur* can apply.

PRESTON, C. J., and WEAVER, J., dissent.

*Appeal from Polk District Court.—*CHARLES A. DUDLEY, Judge.

SEPTEMBER 28, 1918.

THE decedent rightfully made use of a passenger elevator, maintained and operated by the defendant in its building. She fell, in some manner, and was found to be dead. A verdict was directed for the defendant, and plaintiff appeals.—*Affirmed.*

*Parsons & Mills* and *Wilkinson & Wilkinson*, for appellant.

*Carr, Carr & Evans,* for appellee.

SALINGER, J.—I. On the authority of *Cubbage v. Youngerman*, 155 Iowa 39, a case which seems to be fully in accord with authority generally, the trial court held with the appellant that one who operates a passenger elevator in a building to which the public is invited, which elevator the public uses on such invitation, is held to the same measure of care that is required of a public carrier of passengers: that is, the highest degree of skill and foresight consistent with the efficient use and operation of the means of conveyance. The court followed this to its logical end, by hold-

ing that, an accident being shown, and that an injury had happened, it was for the defendant to explain. Notwithstanding this, a verdict was directed against the appellant. It seems to have been done on the theory that conclusive explanation had been made. In ruling on the motion to direct, the judge said that such explanation was made because it was shown that the elevator was operating in its usual way, and was being handled by a careful operator; that there is no evidence that, when the speed was changed, as the elevator progressed upward and it slackened, with a view of halting at the fourth floor, which was the destination of the decedent, there was any motion except the regular, uniform, and habitual motion of the elevator; that it appears there was no jerking, no disturbance, and nothing to cause any passenger upon the elevator any inconvenience, or to put such passenger in any jeopardy. The judge declared it was very clear there could be no negligence arising from operation. He proceeds to say that this reduces the matter to the question of law whether the evidence would suffice to sustain a verdict, if one should be returned for the plaintiff. He states the evidence shows the elevator is of the latest and most approved pattern, and made by one of the leading, if not the leading, manufacturers of elevators in the country; that it is not shown it would be practicable now to fix the door on the outside in such way that there would be no space between the floor of the cage and such door, and so prevent a person falling forward, from having his face drawn therein. The conclusion was "that the presumption which arises from the accident and the injury has been overcome, so that, if there was any negligence to prove, it was upon the plaintiff to make proof of it."

Less than the trial judge recites will sustain his ruling. The pleadings make the case for the plaintiff a very narrow

one. This is so because the following concession was made by the plaintiff:

"I do not rely on that second count: My whole reliance is upon the first count of the petition; and upon that I desire to stand."

The first count of the petition, after certain words were stricken out therefrom, on the motion of the plaintiff, is as follows: That, while riding as a passenger in the south elevator, or cage, maintained by the defendant, and while decedent was on her way to the fourth floor of defendant's building, as a passenger in said elevator, and while in the observance of due care on her part, "she was thrown to the floor of the elevator in such a manner as to crush her head instantly, thereby causing her instant death." It is alleged that "said negligence" caused the injury complained of. The only thing to which "said negligence" can or does refer is that decedent "was thrown to the floor of the elevator." This must be construed to charge that she was thrown by the condition or the action of the car; for in no other sense would it be a charge of negligence for which defendant is responsible. So it is manifest that a verdict was rightly directed against the appellant, unless there be some evidence from which a jury might legitimately find that the head of decedent was crushed because some negligence of the defendant caused her to be thrown to the floor of the elevator. Under the eliminations made by plaintiff, the controlling question is not, as the trial judge seemed to think, whether defendant has overcome a presumption that it was negligent, but is whether any such presumption was ever raised.

### 1-a

The cases cited establish that, if the defendant's elevator was in such condition or so operated as that it might have thrown decedent while a passenger in it, a presumption will be raised that she was thrown because of negligence of

defendant. But in all of them there was evidence of such condition or such operation, or that something happened which would not ordinarily occur when machinery was in proper condition, or the elevator properly operated. In *Railroad Co. v. Pollard,* 22 Wall. (U. S.) 341, a jerk adequate to produce the injury suffered was shown. In *New York, C. & St. L. R. Co. v. Blumenthal,* 160 Ill. 40, a sudden starting of the train was disclosed by the evidence. In *Goodsell v. Taylor,* 41 Minn. 207 (42 N. W. 873), breaking or giving way of the elevator appeared. In *Treadwell v. Whittier,* 80 Cal. 574, and *Griffen v. Manice,* 166 N. Y. 188 (59 N. E. 925), there was evidence that the elevator fell because of breaking or defects in construction or machinery. In *Hartford Dep. Co. v. Sollitt,* 172 Ill. 222 (50 N. E. 178), and *Ellis v. Waldron,* 19 R. I. 369 (33 Atl. 869), the falling of the elevator was held to raise a presumption that same was faultily constructed, or out of repair. In *Springer v. Schultz,* 105 Ill. App. 544, the elevator fell. In *Fox v. Philadelphia,* 208 Pa. 127 (57 Atl. 356), the elevator suddenly started down, as the injured person was about to enter it at the invitation of the operator, and it was held:

"The fact of the falling of the elevator is evidence tending to show want of care in its management."

In both *Fitch v. Mason City & C. L. Tr. Co.,* 124 Iowa 665, 668, and *Dieckmann v. Chicago & N. W. R. Co.,* 145 Iowa 250, there was evidence from which an adequate cause for the injury suffered could reasonably be inferred; and so of *Dorn v. Chicago, R. I. & P. R. Co.,* 154 Iowa 144, *Larkin v. Chicago & G. W. R. Co.,* 118 Iowa 652, *Pershing v. Chicago, B. & Q. R. Co.,* 71 Iowa 561, 566, *Smith v. St. Paul City R. Co.,* 32 Minn. 1 (18 N. W. 827), and *Munsey v. Webb,* 231 U. S. 150 (34 Sup. Ct. Rep. 44). It is proper summing up of the effect of these and like cases that, *if* there be evidence of a cause adequate to produce the injury, it will be presumed that the injury was thereby caused. But that cer-

tain evidence will raise a presumption of negligence does not in the least tend to establish that there is such evidence. And presumption warranted by the existence of certain facts is no evidence of the existence of such facts. One may not beg the question of whether there was an adequate cause, by pointing out the consequences if there was evidence of such adequate cause. See *Eisentrager v. Great Northern R. Co.*, 178 Iowa 713, at 722. Before we may reach consideration of what shall be presumed if there be any evidence that plaintiff suffered injury from being thrown, we must determine whether there is any evidence that she was thrown. At this point, the question resolves itself into whether plaintiff has more than that decedent fell over, and was found to be dead; and whether, if that be all, there is any presumption of negligence to overcome. Take a case where, as here, the highest care is due: that of a passenger on a train. Will anyone claim that, upon proof that decedent was a passenger, fell from her seat, and proved to be dead, the carrier would be called upon to prove it was not negligent? Would not all agree that there was no such duty, because there was no evidence of negligence? That the carrier must absolve itself when something is shown by the plaintiff that raises an inference that defendant was negligent, is indubitable. But that does not change there is no such duty; and plaintiff fails, if nothing appear to raise a presumption of negligence. This plaintiff adduced absolutely nothing, beyond showing that decedent was a passenger, that she fell over, and was dead. We think that this constitutes a failure of proof, and that there is no presumption of negligence to rebut. There must be something more than proof that plaintiff was injured. *Fitch v. Mason City & C. L. Tr. Co.*, 124 Iowa 665, 668. In that case, it is said:

"Of course, mere proof of injury, without showing a collision, derailment, or other cause or circumstance con-

nected with the operation or equipment of the road, does not make out a prima-facie case of negligence. In other words, from the mere fact that plaintiff was found along the side of the track with his leg broken, no presumption of negligence arises."

It is added that rebutting the presumption is required only where a presumption arises, if at all, "from the cause of the injury which was the accident referred to by the court in this case, and from the circumstances attending it. When these are so unusual and of such a nature that the accident could not well have happened without the defendant being negligent, or when it is caused by something connected with the equipment or operation of the train, a presumption of negligence arises on the part of the company." Again: "We think the true rule was given by the trial court, to wit, that, where the evidence shows that a passenger is thrown, by the sudden lurch of a car, out of his seat and onto the ground, and such accident would not have happened under ordinary circumstances," had the requisite degree of care been used, then a presumption of negligence on part of the carrier arises which must be met by it: as, for instance, by showing that such lurch, or jerk, was no more than would have happened in the exercise of due care. Further, that the presumption does not arise "from the mere fact that plaintiff fell from the train," nor would it arise from proof of such fall and proof of "any lurch or jerk or jar of the car."

In line with our *Fitch* case is *Pennsylvania R. Co. v. McCaffrey*, (C. C. A.) 149 Fed. 404. In *Paris & G. N. R. Co. v. Robinson*, 53 Tex. Civ. App. 12 (114 S. W. 658), it is held that, where a passenger is killed by falling or being thrown from a moving train, there is no presumption that the carrier was negligent, until there is some evidence showing the cause of the accident, and tending to show it was due to something under the control of the defendant. In *Levin*

*v. Philadelphia & Reading R. Co.*, 228 Pa. 266 (77 Atl. 456), the holding is: There is no presumption of negligence from mere injury to a passenger, where nothing happened to the car on which he was riding, and there was no injury to it, nor collision, nor breakage of anything. It is held, in *Hart v. St. Louis & S. F. R. Co.*, 80 Kan. 699 (102 Pac. 1101), no presumption of negligence arises from mere proof that a passenger was missed from a train in which he was riding at night, that one of the vestibule doors was open, and that his mangled body was, next morning, found at the side of the track. The mere fact that a passenger is injured while aboard a car, or while alighting therefrom, creates no presumption that the injury was caused by want of care on the part of defendant operating such car.

"It must first be shown that the injury came from the movement of the car by those in charge of it, or from something connected therewith or in the control of the defendant." *Wyatt v. Pacific Elec. R. Co.*, 156 Cal. 170 (103 Pac. 892).

In *Brown v. Union Pac. R. Co.*, 81 Kan. 701 (106 Pac. 1001), it was held that the cause of injury remained a matter of conjecture, despite the fact that there was evidence as follows: Deceased, a passenger, after the train had passed a station, was found 200 or 300 feet east of the station, with his leg severed and many bruises and wounds on his body; cinders and blood on the rails indicated the body had been dragged 25 or 30 feet; no one had seen deceased leave the coach or fall. In *Thomas v. Boston Elevated R. Co.*, 193 Mass. 438 (79 N. E. 749), no presumption is held to have been raised by the fact that, while plaintiff was alighting from a car, her dress caught. In *Paynter v. Bridgeton, etc., Tr. Co.*, 67 N. J. L. 619 (52 Atl. 367), *Jarrell v. Charleston & W. C. R. Co.*, 58 S. C. 491 (36 S. E. 910), and in *Paul v. Salt Lake City R. Co.*, 30 Utah 41 (83 Pac. 563) the holding is that evidence of a fall from a street car, with-

out testimony as to how the fall happened, raised no presumption of negligence. And see *Keller v. Hestonville, M. & F. P. R. Co.*, 149 Pa. 65 (24 Atl. 159), and cases therein cited; *Barnes v. Danville St. R. & L. Co.*, 235 Ill. 566 (85 N. E. 921).

In the argument here, appellant states that "she fell, there being no evidence of what caused her to fall."

Because of this failure of proof alone, no verdict for the plaintiff could rightfully have been sustained.

II.   But there is more than such failure of proof.   It appears affirmatively, by the undisputed testimony for the plaintiff, that the elevator was in such condition and was so operated as that there could be no jerk or lurch or adequate cause for plaintiff's fall, or to throw the decedent. The cage floor was smoothly covered with linoleum; there was nothing in the car over which decedent could have stumbled, except her own handbag.  The evidence as to the construction and operation of the car is so direct and positive, as to its having run smoothly, and so specific as to there having been no jerk or departure from the normal smooth progress of the car at the time of the fall, that, unless perjury be presumed, no jury could have properly found that there was any such at the time. Some of it is as follows:

. Immediately after the removal of the body, the car resumed regular operation.   There was nothing done with the car, except removing the body and getting the gate back—nothing done to the mechanism of the car.   The driver, who is shown without dispute to have been competent, and of long experience, said the car had been working up to the time of the accident always the same as it had been before.  The driver testifies:

"Yes, the car had been working good, and was in good condition. There was nothing unusual about the working of the car that morning.  There was no jerk of the car at

the time Miss Monaghan fell.  It was moving smoothly, without a jerk."

Another witness, defendant's engineer, who inspected the car both before and after the accident, says:

"To my knowledge, the mechanism of the car in which the accident occurred, would say that it was without defects, and nothing wrong."

Because of this situation, there is no room for the application of *res ipsa*.  It follows the judgment of the district court must be—*Affirmed*.

LADD, GAYNOR, and STEVENS, JJ., concur.

PRESTON, C. J., and WEAVER, J., dissent.

WEAVER, J. (dissenting).—My disagreement with the foregoing opinion rests upon two propositions, the soundness of which is readily demonstrable.

I. Without for a moment questioning the purpose or desire of the majority to maintain a proper attitude of judicial fairness, I desire to say that the fact statement upon which the decision is based is so misleading, mistaken, and incomplete as to be, in its effect, palpably unfair and unjust.  The statement is embodied in a four-line paragraph, in these words:

"The decedent rightfully made use of a passenger elevator, maintained and operated by the defendant in its building.  She fell in some manner, and was found to be dead."

This bald statement is repeated in the body of the opinion as follows:

"The plaintiff adduced absolutely nothing, beyond showing that decedent was a passenger, that she fell over, and was dead."

Upon this premise of fact, it was, of course, not difficult to turn the plaintiff out of court with a contemptuous flourish of the arm, as one who profanes the temple of jus-

tice with a frivolous and clearly unfounded claim.  Even a slight examination of the record, with a purpose to know the case presented by the plaintiff, would reveal the following facts:  The deceased, having occasion to visit an office on the fourth floor of defendant's building, entered the defendant's elevator for that purpose.  She was the only passenger; and the only living witness of what occurred is the defendant's servant, who is, in a very material sense, an interested witness.  The entrance to and exit from the cage were through a doorway for which there was provided no door, gate, or guard of any kind.  The shaft through which the cage was operated passed through openings in the floors of the successive stories which it served, and at each floor there was a door in the shaft, through which passengers entered and left the cage.  The floor of the hall at the bottom of the doorway on each floor extended into the shaft or well to meet the floor of the cage, when in position to receive passengers.  The result was a condition such that, if a passenger negligently or by accident should stand in the open, unguarded doorway of the cage, or should stumble or fall or be thrown into such doorway while the cage was being lifted through any of the floors of the building, he was quite sure to be caught and crushed between the doorsill and the structure above, or between the doorsill and the walls of the shaft.  The deceased in this instance entered the cage, and properly took her stand at an apparently safe distance from the door.  The operator's attention was engaged upon his work, and he saw no movement; but, hearing a sound, he looked, saw that his passenger had fallen into the doorway, and, before he succeeded in stopping the machinery, the woman's body was wedged and crushed between the floor of the cage and the grill work which enclosed the shaft above the door.  From the injuries so received, she lost her life.  In view of these wholly undisputed facts, how shall we dispose of the case upon the gratuitous assumption that,

on the trial below, the "plaintiff adduced absolutely nothing, beyond showing that decedent was a passenger, that she fell over, and was dead?" If this is intended to be understood as a sober and truthful statement of literal fact, it is not only unsupported by the record, but is conclusively disproved by the record; and if intended as caricature, it fails of its end: for caricature is supposed to retain some trace of a faithful picture, even though grossly exaggerated —a saving element which is wholly lacking in the opinion which I am discussing.

If my challenge of the fact statement in the opinion is well founded,—and I repeat it without qualification,—this alone justifies my dissent, and I respectfully suggest that it should induce a withdrawal of their concurrence by the members of the majority. It is easy enough for the court to demolish a man of straw of its own making, but I am slow to believe that this court desires to commit itself to that method of adjudicating the substantial rights of litigants who come to its bar for a settlement of their controversies.

II. Having started upon an unwarranted assumption of fact, it is not strange that the opinion should wander afield in its statement and discussion of the law. It requires but little examination to make it plain that the conclusion announced involves a total misconception of the true relation between carriers and passengers.

That the owner of an office building or other structure maintaining and operating a passenger elevator is a carrier, subject to the same duties and liabilities which attach to public carriers of passengers in general, is well settled in this state, as in most other jurisdictions of this country. *Cubbage v. Youngerman*, 155 Iowa 39, and cases there cited. As to the measure of care or duty which carriers of passengers are bound to observe, it is variously expressed in the multitude of precedents bearing upon this point, as, for example: "The greatest possible care and diligence" (*Phila-*

*delphia & Reading R. Co. v. Derby,* 14 How. [U. S.] 468; [14 L. Ed. 502]) ; "the utmost care and diligence" (*Jackson v. Tollett,* 2 Stark. 37; *Moore v. Des Moines & Ft. D. R. Co.,* 69 Iowa 491, 493; *Kellow v. Central Iowa R. Co.,* 68 Iowa 475; *Sales v. Western Stage Co.,* 4 Iowa 547) ; "extraordinary care and caution" (*Raymond v. Burlington, C. R. & N. R. Co.,* 65 Iowa 152, 154) ; "highest degree of skill and foresight consistent with the efficient use and operation of the means of conveyance" (*Cubbage v. Youngerman,* supra).

That the rule thus variously stated has been applied to the construction and operation of passenger elevators, see the *Cubbage* case, supra; *Goldsmith v. Holland Bldg. Co.,* 182 Mo. 597, 606 (81 S. W. 1112) ; *Treadwell v. Whittier,* 80 Cal. 574, 589 (22 Pac. 266, 13 Am. St. 185, 187, 5 L. R. A. 498, 503) ; *Wilmarth v. Pacific Mut. L. Ins. Co.,* 168 Cal. 536 (143 Pac. 780, Ann. Cas. 1915B, 1120) ; *Hartford Dep. Co. v. Sollitt,* 172 Ill. 222 (50 N. E. 178, 64 Am. St. 35) ; *Springer v. Ford,* 189 Ill. 430 (59 N. E. 953, 82 Am. St. 464) ; *Orcutt v. Century Bldg. Co.,* 201 Mo. 424 (99 S. W. 1062, 8 L. R. A. [N. S.] 929) ; *Morgan v. Saks,* 143 Ala. 139 (38 So. 848) ; *Kentucky Hotel Co. v. Camp,* 97 Ky. 424 (30 S. W. 1010) ; *Goodsell v. Taylor,* 41 Minn. 207 (42 N. W. 873, 4 L. R. A. 673, 16 Am. St. 700) ; *Fox v. Philadelphia,* 208 Pa. 127 (65 L. R. A. 214, 57 Atl. 356).

The opinion sidesteps the real issue in the case by emphasizing the allegation in the petition that the deceased "was thrown to the floor in such manner as to crush her head," and therefrom argues that, to sustain a recovery, it is necessary to prove that the woman was thrown to the floor by some negligent act or omission of the operator. In the absence of some order or ruling by the court, the plaintiff was under no requirement to particularize or state the facts constituting negligence on the part of defendant, and did not attempt to do so. *Gordon v. Chicago, R. I. & P. R. Co.,* 129 Iowa 747, 752; *Grinde v. M. & St. P. R. Co.,* 42 Iowa

376; *Scott v. Hogan,* 72 Iowa 614; 14 Encyc. Pl. & Pr. 333. The petition, fairly construed, alleges no more than that deceased was a passenger in defendant's elevator, and that, while the relation of carrier and passenger so created continued, and she was being carried to an upper floor of the building, she was thrown, or fell, bringing her into such position that her head was crushed in or by the movement of the elevator, while it was in the charge of and operated by the defendant or its servant, and without contributory negligence on her part. Proof of these facts made a perfect prima-facie case for a recovery of damages, without allegation or proof of the specific fact or facts constituting the negligence of the defendant. Under such circumstances, negligence is presumed, and the burden of rebutting the presumption is upon the defendant. If the petition alleges facts from which the defendant's negligence is presumed, it is not necessary that he charge negligence in express or specific terms; and, upon proof of the alleged facts, his prima-facie case is made, even though he make no attempt to point out or give evidence of any specific negligent act or omission. In the language of the Nebraska court:

"It is unnecessary to allege what the law presumes. (Bliss Code Pleading, Sec. 175; 1 Boone Code Pleading, Sec. 11). * * * An admission of the facts stated in the petition would be, of course, an admission of the fact supplied by implication of law." *Chicago, R. I. & P. R. Co. v. Young,* 58 Neb. 678 (79 N. W. 556).

We have ourselves held that, where facts are stated from which a presumption of negligence arises, an express allegation of negligence is redundant, and adds nothing to the quantum of proof which the pleader is required to make. *Engle v. Chicago, M. & St. P. R. Co.,* 77 Iowa 661; *Swiney v. American Exp. Co.,* 144 Iowa 342, 348; *Ware Cattle Co. v. Anderson & Co.,* 107 Iowa 231.

For the purposes of the phase of the case presented by

this appeal, we have, then, only to inquire whether the case made by the plaintiff is sufficient to raise a presumption of negligence on the part of defendant. The opinion which I am reviewing assumes it to be the law that, before any such presumption would be indulged in favor of plaintiff, there must be evidence that deceased fell because of some specific defect in the machinery of the elevator, or some specific negligent act or omission in its management by the operator. This is not the law, as it has been often approved by this court and by practically all the courts of this country. Such holding relieves the carrier from any presumption of negligence under any circumstances; for, with proof of specific defects or specific negligent acts or omissions, there is neither room nor need for the aid of presumption. It may be, and indeed is, true that, in many, and perhaps in most, cases between passenger and carrier, the injury received has been received in alleged collisions or derailments, or in some other accident to or mismanagement of the means of transportation; but that something of this nature must be shown before the carrier can be put upon his defense has never before been held by any court of last resort. The measure of the carrier's duty to the passenger is not filled by providing machinery which runs smoothly and without break over a clear and unobstructed track, and putting the same in the hands of an experienced and competent operator. The car or cage or vehicle into which the passenger is invited must be made as safe against peril of injury from the operation of the power and machinery which propels it as is consistent with "the utmost care and diligence of very cautious persons." *Maverick v. Eighth Ave. R. Co.*, 36 N. Y. 378. When carriers undertake to convey persons by such dangerous agencies, "public policy and safety require that they be held to the greatest possible care and diligence." *Philadelphia & Reading R. Co. v. Derby*, 14 How. (U. S.) 467, 485; *Steamboat New World*

*v. King,* 16 How. (U. S.) 469.  In *Indianapolis & St. L. R. Co. v. Horst,* 93 U. S. 291 (23 L. Ed. 898), the Supreme Court of the United States, adhering to these precedents, says:

"'We desire to reaffirm the doctrine, not only as resting on public policy, but on sound principles of law.' * * * The standard of duty should be according to the consequences that may ensue from carelessness. The rule of law has its foundations deep in public policy. It is approved by experience and sanctioned by the plainest principles of reason and justice. It is of great importance that courts of justice should not relax it."

The same rule has been repeatedly approved by this court. *Larkin v. Chicago & G. W. R. Co.,* 118 Iowa 652; *Sales v. Western Stage Co.,* 4 Iowa 546; *Frink & Co. v. Coe,* 4 G. Greene 555.

Of course, this is not meant to hold the carrier to the liability of an insurer, but it does require of him all the painstaking care and precaution of a prudent and careful person to transport his passengers with safety to their persons. And the rule which demands at his hands the highest practicable degree of care and skill in the performance of the transportation of his passengers, is applicable to its full extent with reference to the sufficiency of the means employed by him, including the cars, vehicles, and machinery employed for that purpose. See 10 C. J. 953, where it is said that:

"If injury result to a passenger, which could have been avoided by the exercise of the highest care and diligence on the part of the persons employed in the construction and maintenance of the carrier's road and manufacture and repair of its rolling stock and machinery, the carrier is liable."

If the car or vehicle in which the passengers are expected to ride is so constructed as to expose them, without fault on their part, to possible injury from its movement

or from the mechanism made use of in such service, it is putting it very mildly, indeed, to say that the jury may presume negligence therefrom.

The opinion of the majority widely misses the issue in this case when it holds that, because of failure to show that the fall of the deceased to the floor of the car was caused by negligence of the defendant, no recovery can be had. There is no claim that the deceased was killed by her fall, or by her being thrown to the floor. She was crushed to death, without fault on her part, by the movement of the car in which she was being carried. By the operation of the car, over which she had no control, she was lifted up past the door opening, and was thus fatally injured by being forced into the narrow space between the ascending doorsill and the wall of the elevator shaft, or the framework of the opening through the floor above. The danger of grave, if not fatal, injury to a passenger who might inadvertently or accidentally or otherwise get too near the wholly unguarded door of the moving cage, is too manifest for argument; and that the jury is authorized to find negligence in the carrier because of the peril so created and left unguarded, has been often held, as I shall soon show. The decisions cited in the opinion to the effect that proof of injury to a passenger, and nothing more, does not make a case of negligence, are not in point, in either fact or principle. Not one of them holds, even by remote inference, that there is no presumption of negligence by the carrier where it appears that a passenger, without contributory fault, is injured or killed by the operation of the car or other vehicle of transportation with which such carrier undertakes to perform the service. On the contrary, it is universally held, in such case, that negligence is presumed; and proof of such facts casts upon the carrier the burden of producing evidence to rebut the presumption. Applying this rule in an elevator case, the Pennsylvania court has said:

"The foundation of the rule for the protection of a passenger is in the undertaking of the common carrier, which is to carry safely; but another reason for it is that, when a passenger commits himself to the carrier, he does so in ignorance of the machinery and appliances, as well as their defects, used in connection with the means of transportation, and becomes a passive and helpless creature in the hands of the transportation company and its agents. For the same reason, this rule should be extended to those who operate elevators for carrying passengers. * * * The condition of a passenger caged in a suspended car is one not only of utter ignorance of what has been done or ought to be done for his safety, but of absolute passiveness and pitiable helplessness, when confronted with danger against which human knowledge, skill, and foresight ought to have guarded." *Fox v. Philadelphia,* 208 Pa. 127.

See, also, *Treadwell v. Whittier,* 80 Cal. 574; *Hartford Dep. Co. v. Sollitt,* 172 Ill. 222. The case of *Fitch v. Mason City & C. L. Tr. Co.,* 124 Iowa 665, 668, cited in the opinion, expressly recognizes the rule that the presumption of negligence does arise, not only where the injury to the passenger is caused by a collision or derailment, but also where there is shown "other cause or circumstance connected with the operation or equipment of the road." In the *Fox* case, supra, the father of the plaintiffs had been killed while a passenger in an elevator; and there, as here, the carrier sought to escape liability on the plea that the evidence of an alleged defect did not prove any want of due care. The court replied:

"Whether this evidence was sufficient for the purpose for which it was offered, we need not decide; for the plaintiffs were not called upon for specific proof that the city had been negligent. Their case was for the jury, when they showed that their father had been crushed to death by the elevator, through no fault or negligence on his part; and

it was for the defendant to rebut the presumption that it had been negligent."

It is the duty of the carrier to provide safe and convenient vehicles of transportation. See *Treadwell v. Whittier*, supra, and cases there cited.

The case at bar is analogous in principle to *La Barge v. Union Elec. R. Co.*, 138 Iowa 691. There, the defendant operated a street railway upon a double track. The parallel tracks were so close together that the space between cars passing thereon was very narrow, and a passenger upon an open car, inadvertently leaning his head a few inches beyond the inside guard or post, was struck by a car moving on the other track, and killed; and a finding by the jury that the carrier was negligent in so constructing and operating its road was sustained. See, also, *Dahlberg v. Minneapolis St. R. Co.*, 32 Minn. 404. If negligence may be predicated upon the act of a common carrier in operating its car so close to a wall or other car or structure that a passenger inadvertently or accidentally permitting a portion of his body to extend through an unguarded window or other opening is thus injured, there is even better reason for our holding it a negligent thing to carry passengers in an elevator with an unguarded opening in such proximity to the wall of the elevator shaft.

That such is the rule is shown by an unbroken line of authorities. For example, in *McKinnie v. Kilgallon*, (Pa.) 11 Atl. 614, the proprietor of a hotel provided an elevator for the handling of freight, and for use by his servants. One of the servants using the elevator stood upon the platform, so near the edge that in some way her foot was caught between the platform and the corner of the doorway to one of the floors through which she was being carried; and the question of defendant's negligence was held to be a jury question. In *Quimby v. Bee Bldg. Co.*, 87 Neb. 193 (127 N. W. 118), a passenger elevator was operated with an un-

guarded door opening like the one we have here in question. A passenger entered, to be carried to an upper floor, and stood leaning up against the side of the cage. In that position, he inadvertently extended his foot beyond the side of the cage floor; and, as he was lifted from one story to the next, his foot was caught under the projecting edge of the upper floor, and was injured. On the trial, the plaintiff insisted that the construction of the elevator—which, in all essential respects, was like the one in the present case— was negligent: if not as a matter of law, it was still competent for a jury to so find. The court so ruled, and, upon appeal, the ruling was affirmed. The court also held that if, as the car was constructed and operated, it was dangerous for a passenger to ride in or near the door opening, it was the operator's duty to give his passengers warning thereof. Squarely in point is the comparatively recent case of *Munsey v. Webb*, 231 U. S. 150 (58 L. Ed. 162). There, as here, the defendant maintained a passenger elevator in an office building, and a passenger entered the cage, to be taken to an upper floor. The cage doorway was open and unguarded, although it had a collapsible gate, which was not being used. There, as here, the passenger fell, with his head in the open door, and was carried up against the upper floor, where he was crushed and killed. There, also, as here, it was sought to escape liability, because there was no evidence that the passenger's fall was due to any negligence of the defendant, and because, if there was negligence, it was not the proximate cause of the death, but merely a passive condition, made harmful by the fall. Rejecting these contentions, the court says:

"Neither argument can be maintained. It is true that it was not to be anticipated specifically that a man should drop from internal causes into the open door of the car. But the possibility and the danger that in some way one in the car should get some part of his person outside of the

car while it was in motion was obvious, and was shown to have been anticipated by the door being there. In some circumstances at least, it was a danger that ought to be and was guarded against. It is said the danger was manifest only when the car was crowded, and that the door was needed only for that. * * * But the accident was similar in kind to those against which the door was provided; and we are not prepared to say, contrary to the finding of the jury, that the duty to keep it shut or to guard the space with the arm (of the operator) did not exist in favor of all travelers in an elevator having the structure that we have described. It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye. * * * Even if it were true that the neglect was merely a passive omission, the deceased was invited into the elevator, and the principle of the trap cases would apply. * * * The whole question comes down to whether we are prepared to say, as a matter of law, against the finding of the jury, that, in an elevator constructed as this was, with a special source of danger in the shaft outside of the car, to require the defendant to guard the door space *in transitu* at his peril is too strict a rule. We cannot go so far."

The court further intimates that, if necessary to sustain a recovery, the jury might have found negligence on the failure of the operator to stop the car after the fall of the deceased, and in time to prevent the injury. The testimony in this case tends to show that the operator saw the decedent as she fell. At one place, he says he saw her falling; and again, says he saw her lying in the door when the platform of the elevator was about three feet above the third floor. Giving his story, as we must, its most favorable effect for the plaintiff, the deceased fell in the presence of the operator, when the platform was at or just passing the third

floor; and yet the cage was not stopped until it was or had been lifted its full length; and it is at least questionable whether its stop at that point was not brought about by the wedging of the body of deceased between the cage and the grill work of the shaft. A finding of negligence from such showing, were it necessary to enter into that question, could not be said to be unjustified. Bearing in the same direction, it is said, in *Quimby v. Bee Bldg. Co.*, supra, that it is a "matter of common knowledge that such a car is managed by the manipulation of a lever, which is done with one hand, and that the conductor has the free play of his eyes and his other hand, by the diligent use of which he can guard against just such accidents."

The trial court seems to have thought, and the opinion, at least impliedly, adopts the theory, that, even if a presumption of negligence might otherwise be indulged, it was rebutted, as a matter of law, by evidence that the elevator was of approved modern pattern and was made by the leading manufacturer of elevators in this country, and by the testimony of the operator that the machinery was operating properly and smoothly. Were we to admit the materiality and truth of this testimony, it would constitute no defense, and its utmost effect would be to make an issue of fact for the determination of the jury. It was for the jury, and not for the court, to say whether this unguarded door, opening, as it did, against the wall of the shaft, a few inches outside of the cage, as it was rapidly lifted and lowered from story to story of the building, was a source of danger to passengers, which could have been removed or guarded against by the exercise of the highest possible care, prudence, and skill consistent with the practical use of such conveyance. In the *Munsey* case, the highest court of our land has answered this question in favor of the plaintiff. It has been decided over and over again that proof that the car or other vehicle or machinery employed by the carrier

was made by reputable and skilled manufacturers constitutes no defense; nor is it sufficient to rebut an inference or presumption of negligence on the part of the carrier. *Hegeman v. Western R. Corporation*, 16 Barb. (N. Y.) 353, 356; same case on appeal, 13 N. Y. 1, 26; *Francis v. Cockrell*, L. R. 5 Q. B. 184; *Sharp v. Grey*, 9 Bing. 457; *Alden v. New York Cent. R. Co.*, 26 N. Y. 102; *Caldwell v. New Jersey Steamboat Co.*, 47 N. Y. 282, 287; *Treadwell v. Whittier*, 80 Cal. 574, 575; *Morgan v. Chesapeake & O. R. Co.*, 127 Ky. 433 (105 S. W. 961); *Siemsen v. Oakland, S. L. & H. Elec. Co.*, 134 Cal. 494 (66 Pac. 672); *Illinois Cent. R. Co. v. O'Connell*, 160 Ill. 636 (43 N. E. 704). Neither is the carrier exonerated by the fact that its vehicle or machinery is not obviously dangerous (*Goodsell v. Taylor*, 41 Minn. 207); nor by the fact that, in its construction and operation, the carrier has followed the general custom or usage. *Lee v. Publishers, Geo. Knapp & Co.*, 55 Mo. App. 390; *Caldwell v. Steamboat Co.*, supra; *Dougherty v. Kansas City & Ind. R. T. R. Co.*, 128 Mo. 33; *Hill v. Portland & R. R. Co.*, 55 Me. 438. Where facts are shown, giving rise to a presumption of negligence on the part of the carrier, the question whether other proved circumstances serve to rebut the presumption is for the jury. *Orcutt v. Century Bldg. Co.*, 214 Mo. 35 (112 S. W. 532). In *Southern Pac. Co. v. Hogan*, 13 Ariz. 34 (108 Pac. 240), plaintiff relied solely upon the presumption of the carrier's negligence arising from the wreck of the car in which he was a passenger. The defendant offered proof of the good condition of its track and the careful handling of its train; but it was held that whether the testimony of these witnesses was a sufficient rebuttal of the plaintiff's case depended upon the weight to be given by the jury to such evidence. It is not to be overlooked that such cases do not differ from cases in general, in that they depend, to a great extent, upon the testimony of witnesses having more or less personal or partisan interest in the

result; and its weight and effect are peculiarly for the consideration of a jury. The operator, the defendant's servant, was the sole living witness of the accident, with the inevitable result of being profoundly interested in making a showing of due care on his part and on part of his employers; and his credibility was a question for the jury alone. In the *Larkin* case, supra, we adhered to this rule, saying:

"This is not to be understood as a holding or suggesting that the jury was justified in indulging in conjecture as to any specific defect * * * but simply that, the defendant having assumed the burden of overcoming the prima-facie or presumptive case of negligence which it concedes had been established, it remained a question for the jury to say whether the showing of diligence and care * * * was sufficient to relieve the company from the effect of such presumption."

Such is the clear and unqualified effect of our own cases. *Weber v. Chicago, R. I. & P. R. Co.*, 175 Iowa 358; *Lewis v. Cedar Rapids & I. C. R. & L. Co.*, 183 Iowa 725; *Fitch v. Mason City & C. L. Tr. Co.*, 124 Iowa 665. In the *Lewis* case, our latest pronouncement upon this subject, we held it error for the trial court to rule or instruct that the burden was upon a passenger injured by the operation of a car to prove the specific facts constituting negligence of the carrier, and said:

"Plaintiff was not required, to make out a prima-facie case, to prove the facts constituting the negligence on the part of the defendant causing the derailment."

In the same case we said:

"Proof that plaintiff was a passenger on the derailed car, and that he was free from contributory negligence on his part, made out a prima-facie case against the defendant; and a presumption arose that the accident was the result of some negligence on defendant's part."

In the *Fitch* case, we said that, when the circumstances

of an injury to a passenger are of such a nature that the accident could not well have happened without the negligence of the defendant, *"or when it is caused by something connected with the equipment or operation of the train, a presumption of negligence arises* on the part of the company." When this showing has been made, and the carrier has made its explanation or defense, the issue so raised is for the jury. *Larkin v. Chicago & G. W. R. Co.,* 118 Iowa 652, 656; *Smith v. St. Paul City R. Co.,* 32 Minn. 1 (18 N. W. 827). In the last cited case, it is said:

"The application of this rule is not limited to a breakage or defect in the vehicle in which the passenger is carried, but 'extends to any other thing which the carrier can and ought to control as a part of its duty to carry passengers safely.' "

Can it reasonably or fairly be said that the killing of a passenger, by crushing her head in the movement or operation of the cage in which she is being carried, is not caused by "something connected with the equipment or operation" of the elevator? I think I hazard nothing in assuming that it will not be so construed by any member of the majority. If I am correct in my conclusion in this respect, the presumption of defendant's negligence must be admitted, and the trial court's direction of a verdict for defendant was erroneous. That the jury could rightfully have found that the construction of the elevator cage with an open doorway against the wall of the shaft, unguarded by door or gate, or by the operator who controlled the operation of the cage, was not consistent with the highest practicable skill, diligence, and foresight on the part of the carrier, and that the record discloses no showing rebutting, as a matter of law, the presumption of negligence arising therefrom, is so clear and so consonant with justice and with the public policy which imposes upon public carriers of passengers such high degree of responsibility for the preservation and safety of

human life that I must refuse to believe that this court, upon sober second thought, will affirm the judgment below.

Referring again to the *Fitch* case, we find that, in still another phase, it is quite parallel in principle to the case at bar. There, a passenger in an electric car, sitting near an open door, fell or was thrown through the door, and was injured. The seat which he occupied was not supplied with any guard or arm to prevent such an accident; and it was held, on appeal, that the question whether the omission of such guard was negligence, was for the jury. Also in point is the case of *Lee v. Publishers, Geo. Knapp & Co.*, 55 Mo. App. 390, and the same case on appeal, 137 Mo. 385, and 155 Mo. 610. There, the elevator cage, like the one in this case, had an unguarded doorway, into which a passenger, losing his balance, fell, and was injured, and it was held that the question whether this omission was negligent, was for the jury. In *Hartford Dep. Co. v. Pederson*, 67 Ill. App. 142, it was likewise held that whether an elevator was properly equipped with safety devices, and whether a defect was a latent or hidden one, which could not have been discovered upon due inspection, was for the jury.

Without prolonging this discussion, already too extended, we cite, without further quotation, the following cases, as affording substantial support to the position I have taken: *Field v. French*, 80 Ill. App. 78; *Muehlhausen v. St. Louis R. Co.*, 91 Mo. 332 (2 S. W. 315); *Summers v. Crescent City R. Co.*, 34 La. Ann. 139.

While there are a few states in which the courts have declined to say that the owner and operator of a passenger elevator is chargeable with the same degree of care and subject to the same presumptions as public or common carriers, a very large majority of the courts adhere strictly to the rule that, whether or not the carrier of passengers in an elevator is a common carrier, in the strict sense of the term, the duties are of enough similarity in their na-

ture so that both are chargeable with the highest degree of care, skill, prudence, and foresight possible, with due consideration for the efficient and practical use of such instrumentality. To this doctrine we have been definitely committed; but the announcement of the opinion I have been reviewing will, of necessity, array us with the minority. This, I am deeply convinced, ought not to be. The rule for which I contend is strict, but not unjust. Too many of the passenger elevators in this and other states have been stained with the blood of men, women, and children to render tolerable any relaxing of the protection to passengers which the law has provided, in the public interest. In no other method of transportation are passengers more helpless than in a moving elevator cage; and when they entrust themselves to the care of the operator, they are entitled to feel that he has used the highest degree of skill and care, not only in the handling of the cage, but in its construction, and in its provisions to prevent or avoid injurious contact with anything from which they may suffer injury. It is a matter of quite frequent observation that there are persons so constituted that riding upon a railway car or in an elevator is liable to produce in them a feeling of sickness, and persons so affected sometimes faint. Passengers are no exception to the general liability of people to sudden sickness. They sometimes fall, as did the deceased in the *Munsey* case, supra, from what the court there calls "internal causes," or, as in the *Lee* case, supra, by "losing their balance," or from a large variety of causes consistent with due care on their part. The possibility of such an accident, though perhaps not of frequent occurrence, is one which, as held in the *Munsey* case, the court cannot hold, as a matter of law, the carrier is under no obligation to anticipate. And certainly, if the cage be constructed and operated with, say, exposed gearing, or live electric wires, or other manifest means of injury, into or upon which a passenger, falling,

may be thrown, and receive almost certain fatal injury, few reasonable persons could be found to say, as a matter of law, that such a carrier has exercised the high degree of care, caution, and foresight with which he is charged, for the protection of those whom he undertakes to serve. Is it not perfectly clear that an open and unguarded doorway in the cage operated, as was this one, by a lone servant, who turns his back upon the passenger, was an open death trap, from which, the jury might reasonably find, danger ought to have been anticipated? To the reasonable mind, it would seem that to state the question is to answer it.

The court erred in directing a verdict for the defendant, and the judgment ought·to be reversed.