O. B. HARTER, Appellee, v. THE COLFAX ELECTRIC LIGHT AND POWER Co., Appellant.

**Electricity:** NEGLIGENCE: EVIDENCE. In this action the evidence is
1 reviewed and held insufficient to charge defendant, a producer of electricity, with negligence resulting in an injury from a defective light wire.

**Negligence:** ELECTRICITY: CARE. One furnishing electricity is held
2 to the highest degree of care, but is not an insurer against all accidents, nor is he responsible where a want of care is not shown.

**Negligence.** Where there is no evidence that the party sought to be
3 charged was either knowingly or negligently responsible for the injury, the maxim "the thing speaks for itself" is not applicable.

**Presumption of negligence.** A presumption that the injury resulted
4 from the negligence of one who furnished the electricity, does not obtain, where it is shown that the negligence of a third person intervened.

**Evidence.** Hypothetical questions, not supported by the evidence,
5 should be denied.

*Appeal from Jasper District Court.*— HON. W. G. CLEMENTS, Judge.

WEDNESDAY, JULY 13, 1904.

ACTION at law to recover damages resulting from injuries sustained by plaintiff in coming in contact with an electric light wire and lamp in the bathroom of a hotel at Colfax, Iowa. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.— *Reversed.*

*G. M. Tripp,* for appellant.

No appearance for appellee.

DEEMER, C. J.— The action was originally brought against the defendant and one Martha Croft, who it is claimed owned a hotel in Colfax known as the "Mason House," and operated in connection therewith the bathroom in which plaintiff claims he received his injury. The verdict was against both these defendants, but the trial court sustained a motion for a new trial as to defendant Croft, and rendered judgment against the electric light and power company alone, and the appeal is by that company.

The negligence charged is " that defendants, and each of them, carelessly and negligently suffered and permitted the said electric light wires and the lamp attached thereto to be insecurely fastened to the ceiling of the room in which said injury occurred, and in using and permitting the use of the wires as aforesaid, the same being unsuitable and unsafe by reason of defective insulation; that said defendants, and each of them, were further negligent in not keeping the fastenings of the lamp and the wires connected therewith in good repair and of sufficient strength for the purposes for which they were used; in permitting the said wires to become of inadequate strength and unsafe for the purpose for which they were used; in carrying and permitting to be carried over said wires dangerous currents of electricity, without having said wires properly insulated; in failing to exercise reasonable care in seeing that said wires and the fastenings thereof were kept in good repair and in a safe condition, in that said wires and said fastenings were originally insufficient, unsuitable, improper, dangerous, and unfit for use, and were so known to the defendants and each of them." The trial court submitted the questions of insecure fastening of the electric light wire to the ceiling of the bathroom and the passage of a dangerous current of electricity over improperly insulated wires to the jury, and said, in effect, that if the wires and lamps in the bathroom were not safely

and properly insulated or secured, and defendant conducted a dangerous current of electricity over and through said wires, knowing the dangerous character of the current, and that if such wires and lamps fell upon and injured the plaintiff, then the defendant company would be guilty of negligence, notwithstanding the wires and fixtures were not owned by the company. It also instructed that from the fact that the accident occurred, and the nature thereof, the presumption arose that the defendant was guilty of negligence, and that the burden was upon the defendant to rebut such presumption.

Plaintiff testified that he went to the bathroom to take a bath, and that after he had undressed, and while standing under the electric light wire, it fell down upon him, burned his back, his hands, and his feet, and gave him a shock which rendered him unconscious. He said that the floor was wet and sloppy, and that

1. ELECTRICITY: negligence; evidence.

his body was covered with perspiration. He did not know of his own knowledge how the wire was fastened to the ceiling, nor did he pretend to speak of the character of the insulation upon the wires. This, in addition to testimony as to the extent or character of plaintiff's injuries, and some opinions of experts regarding the character of electricity necessary to produce such injuries as plaintiff complained of, was practically all there was to his case. True, he introduced one witness who was in the room the second day after the alleged accident, and saw the electric wire lying on the floor of the bathroom, and who about ten days afterward was in the bathroom again, and took hold of a wire he found there, and felt the effects of electricity, but who said that the wire was the kind ordinarily used for electric lighting purposes. The defendant's evidence showed that the bathroom was in charge of a man by the name of James, who rented the same from the Crofts. The defendant also produced the electric light wire which was in the bathroom when it is claimed plaintiff was injured, and showed that it was all

properly insulated. It also showed that it did not furnish the wire or fixtures for the Mason Hotel, and that they belonged to the proprietors thereof. It further showed that its system was such as to require transformers or converters; that it had one at the Mason House, properly equipped, which reduced the current from 1,100 volts on the primary wires to fifty-two on the secondary, which ran from the transformer into the hotel; that this transformer was in good condition; and that it had no knowledge of defects of any kind in the wiring of the hotel.

It is shown beyond controversy that, if such a current as the primary wires carried had been conveyed into the hotel, it would have burned out the fuse in the transformer, and extinguished all the lights in the hotel; that it would also have burned out the fuses in the rosettes, which are ordinarily attached to the ceiling wherever a light is intended to drop therefrom. It further appears that none of the lights in the hotel were extinguished save the one in the bathroom; that none of the fuses were burned out, and that the transformer was in good condition after the accident. The testimony from the experts all shows that it was impossible to form what is known as a " ground " beyond the transformer which would carry any greater current of electricity than ordinarily passed over the secondary wires, which was fifty-two volts, provided, of course, that the transformer was in good condition. There was some testimony from the defendant that the wire in the bathroom was held in place by a screw hook instead of a rosette, and that this screw hook broke or pulled out, and let the wire down upon the plaintiff. It is further shown that fifty-two volts of electricity would not produce the injuries of which plaintiff complained, nor any serious injuries of any kind. It is also shown that there was a meter in the Mason Hotel, which would have been burned out had any such current as the plaintiff complains of passed over the secondary wires. Further it was shown that it was impossible for a current of 1,100 volts to pass by

induction through the converter so as to produce a dangerous current on the secondary wires.

This was practically all the evidence in the case, and, aside from some rulings on evidence, the only questions for our determination are, does it show negligence on the part of the defendant company, and was the court right in giving the instructions to which we have referred? As there is no showing that the defendant company did the wiring of the hotel or furnished any of the electric light wires or fixtures used therein, it was not, of course, responsible for the fall thereof. It owed the plaintiff no duty in this respect. It did, however, owe to the owner of the property, and to any person rightfully upon the premises, the duty of not sending into the hotel a deadly or dangerous current of electricity. Handling, as it did, a dangerous element, it was held to the highest degree of care in the construction, inspection, repair, and operation of its plant and machinery; but it was not an insurer against all accident. Nor was it responsible in the absence of some showing of want of care. There is absolutely no showing that defendant knew that it was sending a dangerous current of electricity into the hotel. If it maintained its transformer in good condition, and sent into the hotel no more than fifty-two volts of electricity, which the evidence shows would not have been dangerous, and the accident occurred by reason of a short circuit created by the fall of the wire upon the plaintiff, the defendant would not be responsible, unless it knew or should have known of the condition of the wire, and that through a fall upon some one it was likely to produce a short circuit, which would injure the person whose body might form it.

2. NEGLIGENCE: electricity; care.

The maxim *res ipsa loquitur* does not apply to such a case as this, for there is no evidence that the accident was due to a dangerous current knowingly, or even negligently, sent into the hotel by the defendant company. The testimony shows that the negligence was

3. NEGLIGENCE.

primarily that of a third person in wiring the house in such a manner as that the fixtures were likely to fall and injure some of its occupants. Plaintiff's theory seems to be that when the wire fell upon him a short circuit was created, which did the damage complained of. This was due, not to defendant sending a dangerous current into the house, but to something over which it had no control, and for which it was not responsible.

The trial court was in error in submitting the case to the jury on the theory that defendant sent a dangerous current into the house knowing it to be dangerous, for the rea-

4. PRESUMPTION son that there was no evidence to sustain any
OF NEGLI-
GENCE.          such instruction. It also erred in submitting the case to the jury on the theory that under the circumstances shown a presumption of negligence on the part of the company arose which it was its duty to rebut. This rule does not apply where the negligence of a third person intervenes. The evidence shows without dispute or question that if defendant had sent into the hotel such a current of electricity as it is claimed it did, it would have burned out the fuses in the transformer, destroyed the meter, burned out all the fuses in the fixtures, and destroyed the lights. None of these things occurred, however. The only possible theory, then, on which a recovery may be had is that the wire coming in contact with plaintiff's body, he at the time standing on a wet floor, formed a short circuit, and that he was injured by reason thereof. That phase of the case was not submitted to the jury. Should we concede that it was the duty of the defendant to inspect electric wiring and fixtures in the hotel — a matter of much doubt, and which we do not at this time decide — there was no evidence that defendant failed to make this inspection, no evidence as to when the hotel was wired, and no evidence that defendant knew there was a wire in the bathroom. But as the case was not submitted on that theory, we need not further speculate as to defendant's liability thereunder. Unless we accept as proof

of negligence the fact that the accident happened under the circumstances already narrated, there is nothing in the case tending to show liability on the part of the company. Under the facts disclosed we do not think this presumption obtains. But, if it did, it is thoroughly demonstrated that defendant did not knowingly send into the hotel a current of dangerous voltage. Indeed, we are of the opinion that plaintiff could not have received the shock he claims to have had without some evidence thereof being found in the other fixtures or lights of the hotel. And, as we have said, none of them were disturbed. The meter remained intact, and the transformer continued to perform its functions. None of the lights in the hotel were in any manner affected, and none were extinguished save the one in the bathroom, which fell to the floor. The testimony shows that it was a physical impossibility for these things to exist if such a current as plaintiff claims passed through him. If defendant sent into the building no more than a current of fifty-two voltage, and plaintiff received his injuries through a fall of a wire for which defendant was in no manner responsible, then defendant cannot be held liable for the injuries received. *Griffin v. Jackson Light Company*, 128 Mich. 653 (87 N. W. Rep. 888, 55 L. R. A. 319, 92 Am. St. Rep. 496); *National Co. v. Denver Co.* (Colo. App.), 63 Pac. Rep. 949. The testimony shows that the primary wires of the defendant company were all in good condition at the time the accident is said to have occurred, and that defendant was not negligent with respect thereto. The case in some of its aspects is not unlike that of *Martinek v. Swift & Co.*, 122 Iowa, 611, in which we held that no negligence of the defendant was shown. See, also, *Knowllon v. D. M. Edison Co.*, 117 Iowa, 456.

This disposes of the case, but it is well to say that some errors were made in rulings on evidence which should not be repeated on a re-trial. For example, some of the hypothetical questions put to plaintiff's experts were not sup-

ported by the testimony.   For instance, experts were per-
mitted to state that locomotor ataxia might result from such
**5. HYPOTHETICAL** a shock as plaintiff claims he received.   There
**QUESTIONS.**         was no evidence that he had any symptoms,
even, of this trouble.   Other rulings are disposed of by what
we have already said of the law of the case.

For the errors pointed out, the judgment must be and
it is REVERSED.