# Delahunt *v.* United Telephone & Telegraph Company, Appellant.

*Negligence—Telephone companies—Electric shock—Evidence—Burden of proof—Res ipsa loquitur.*

In an action to recover damages for the death of a person killed by an electric current from a telephone on his premises, the rule res ipsa loquitur applies, and this notwithstanding the fact that the deadly current was not generated by the telephone company.

Though the wire which connects with a telephone is intended to conduct only a harmless current of electricity, the telephone company is bound to know, that it can become the conductor of a deadly one, and that such

a current will pass over it, if it is not properly insulated and should come in contact with a wire heavily and dangerously charged. It is as much the duty of the telephone company to see that no such current shall thus pass over its wires as it is to send only a harmless one from its own exchange.

It is the duty of a telephone company to its patrons to exercise at all times the highest degree of care and vigilance to protect them from a dangerous electric current over its wires from any source. This is the implied undertaking of every such company, and in towns and cities threaded with dangerous electric wires the duty of the company is, by constant supervision of its wires, to prevent their becoming conductors of a dangerous current from others. When they do become conductors of it, there is reasonable evidence that there has been a neglect of duty, and the burden is cast upon the telephone company of showing that it has not been negligent. As it is not an insurer of its patrons against the danger of electric currents on its wires, the law will not hold it responsible for what it cannot help; but when there is an accident which in itself affords reasonable evidence of negligence, it must show why it should be relieved from liability.

In an action against a telephone company to recover damages for death of plaintiffs' father, it appeared that the deceased had been a patron of the defendant, and that some time prior to his death his telephone had been disconnected. About three weeks prior to the accident the deceased received a letter from the company stating that his 'phone would be "connected at the earliest possible moment." On the evening of the accident a sound resembling the noise made by a cricket came from the direction of the telephone. The deceased said, "I believe that is the 'phone; I wonder if it is in use." He then got up, walked over to it, and took the metal transmitter down while standing on a wet carpet and was almost instantly killed by an electric shock. *Held*, (1) that the case came within the rule res ipsa loquitur, and that plaintiffs were not required in the first instance to prove more than that their father was killed by an electric shock in using the instrument which, with its connections, the defendant had furnished to him, as one of its subscribers; (2) that the evidence was not sufficient to sustain a ruling of the court that the deceased had been guilty of contributory negligence.

*Negligence—Damages—Parent and child.*

Where, in an action by children to recover damages for the death of their father, it appears that one of the plaintiffs is a deaf mute about seven years of age, a judgment for the plaintiffs will not be reversed because of a remark made by the trial judge to the effect that the father might have been liable to contribute more to such child's support "than he ordinarily would," where it also appears that the jury were distinctly instructed in language that they could not have misunderstood, that if the appellees were entitled to recover, the amount of the verdict would have to be limited to compensation to them for loss of what they could have expected from their father for their support and education while in their minority, during which period he would have been entitled to their earnings.

*Practice, C. P.—Trial—Evidence—Testimony taken at former trial.*

It is within the discretion of the court to permit the testimony of a wit-

ness, taken at a former trial of the case, to be offered, upon proof of the effort that had been made to subpœna the witness.

Argued Feb. 5, 1906.  Appeal, No. 142, Jan. T., 1905, by defendant, from judgment of C. P. Delaware Co., March T., 1903, No. 63, on verdict for plaintiffs in case of Edward N. Delahunt and Margaret L. Delahunt by their next friend, Mary G. Lenny, v. United Telephone & Telegraph Company.  Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ.  Affirmed.

Trespass to recover damages for death of plaintiff's father. Before RALSTON, J., specially presiding.

The circumstances of the accident are stated in the opinion of the Supreme Court.

At the trial Mary G. Lenny was asked this question:

" Q. How is Margaret as to being in possession of all her faculties ? "

Mr. Geary : That is objected to.  It is not a question of the child's condition.

The Court : The child's condition might be such as to make the father liable to contribute more to it than he ordinarily would.  The objection is overruled.

Exceptions noted for defendant. [1]

The court admitted under objection the letter from defendant's manager, to Thomas F. Delahunt, quoted in the opinion of the Supreme Court. [2]

The court also admitted under objection the testimony of James Mullen taken at a former trial of the case. [3, 4]

The court charged in part as follows:

[The deceased, it appears, took hold of the telephone, either to use it, or for some purpose, and under the ruling of the . court that was a thing he had a perfect right to do.  This defendant company having supplied him with a telephone for his use, he had a right to believe that they would supply him with an instrument which would be perfectly safe to use in the ordinary way, and consequently having been injured in taking hold of the telephone the court has held, and instructs you, that that is sufficient evidence, when uncontradicted, of the negligence of the defendant.] [6]

[It has been urged upon you by the defendant's counsel that the deceased, the father of the plaintiffs, was guilty of contributory negligence. If he was, if his own negligence contributed in any way to the accident, these children cannot recover. The contributory negligence alleged is that having heard a sound, or clicking, which one of the witnesses described as resembling the noise of a cricket, he ought not to have touched the telephone. You will consider whether that testimony shows that there was anything which occurred that night to put him on his guard or warn him that it was dangerous for him to touch that telephone. Both of the witnesses said they heard this noise and that he went over and took hold of the speaking transmitter and pulled it down, and the injury happened immediately after. What had occurred to warn him that that was a dangerous thing to do? In order to use the transmitter it would be necessary for him to pull it down to a height that would enable him to speak into it. The fact that the floor was wet you will consider; you will consider whether there was anything which would cause a reasonable man to suppose that he might not use that telephone in the ordinary way, and if there was nothing to so warn him and put him on his guard he would not be guilty of any contributory negligence.] [7]

Verdict and judgment for plaintiffs for $10,175.89. Defendant appealed.

*Errors assigned* among others were (1–4) rulings on evidence, quoting the bill of exception; (6, 7) above instructions, quoting them.

*A. B. Geary* and *Joseph H. Hinkson,* for appellant.—The doctrine of res ipsa loquitur does not apply in this case.

The appellees having alleged certain negligent acts were bound to prove them.

The question of negligence is always for the jury and the court should not have given binding instructions against appellant: Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540; Devlin v. Beacon Light Co., 198 Pa. 583; Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Ryder v. Jacobs, 182 Pa. 624; Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Wiest v.

Electric Traction Co., 200 Pa. 148; Noonan v. Pardee, 200 Pa. 474; Ubelmann v. American Ice Co., 209 Pa. 398.

Decedent was guilty of contributory negligence: Alexander v. Nanticoke Light Co., 209 Pa. 571; Lehigh Valley R. R. v. Greiner, 113 Pa. 600; Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449; Mattimore v. Erie, 144 Pa. 14.

Testimony as to condition of one of the children was not admissible and the rulings of the court that the father might be liable to contribute to the support of the children were erroneous: Mansfield Coal Co. v. McEnery, 91 Pa. 185; Penna. R. R. Co. v. Butler, 57 Pa. 335; McHugh v. Schlosser, 159 Pa. 480.

The letter of the manager of the appellant written three weeks before the accident should not have been admitted in evidence.

*O. B. Dickinson*, with him *John E. McDonough*, for appellees. —The facts and circumstances or the res may in themselves fairly justify a reasonable inference of negligence, and are therefore ipso facto evidence of negligence sufficiently strong to justify the trier of the fact in finding negligence.

Of this the cases of the falling of articles upon the highway are illustrations.

The falling of cinders: Lowery v. Manhattan Ry. Co., 99 N. Y. 158 (1 N. E. Repr. 608).

The falling of a bolt: Volkmar v. Ry. Co., 134 N. Y. 418 (31 N. E. Repr. 870).

The dropping of telegraph wires: Thomas v. Western Union Telegraph Co., 100 Mass. 156; Penna. Tel. Co. v. Varnau, 15 Atl. Repr. 624.

Articles falling from windows: Byrne v. Boadle, 2 Hurlst. & C. 722; Scott v. London, etc., Docks Co., 3 Hurlst. & C. 596.

Falling bricks: Kearney v. Ry. Co. L. R., 5 Q. B. 411; Sheridan v. Foley, 58 N. J. Law, 230 (33 Atl. Repr. 484).

OPINION BY MR. JUSTICE BROWN, May 14, 1906:

The father of the appellees was a patron of the appellant. During the month of February, 1902, there was a severe storm, and the connection of his telephone with the exchange was broken. This disconnection continued for some weeks, and,

according to the theory of the appellant, which seems to be accepted as correct, the telephone was not connected with the exchange at the time the decedent was shocked to death in taking hold of the transmitter. The allegation of the appellees, as set forth in their statement, is that the appellant, " by its careless and negligent management of its wire system permitted one of its wires, which was not properly insulated, to come in contact with the wires of another company, heavily charged with electricity, whereby the said electric current was conveyed to the said telephone of said Thomas F. Delahunt when he was making proper and lawful use thereof, whereby by reason of the premises and the negligence of the said defendant company he received a heavy shock of electricity and was thereby then and there killed."

During the disconnection of decedent's telephone with the exchange he received a letter from the manager of the company, which was properly admitted in evidence by the court, and of which the following is a copy:

" United Telephone & Telegraph Company,
" Chester, March 18, 1902.
" Mr. Thomas F. Delahunt,
" 21st and Edgmont Avenue,
" Chester, Pa.
" Dear Sir:—

" I regret to hear you have been among the unfortunate subscribers living along Edgmont avenue, and assure you we are making every possible effort to get you back into service, and hope to do so by the last of this week or the first of next. I will gladly make your 'phone one of special importance and get you connected at the earliest possible moment. We are going to renew your service up Walnut street, thus explaining the seeming neglect of that part of the city.

" Yours very truly,
" W. P. Hull, Manager."

On the evening of April 9, 1902, a sound resembling the noise made by a cricket came from the direction of the telephone, and the deceased said " I believe that is the 'phone. I wonder if it is in use." He then got up, walked over to it and took hold

of the transmitter with both hands, drawing it down. As he did so there was a flash of flame all around the telephone, and he was almost instantly killed by an electric shock. After the appellees had shown this they were about to prove the specific negligence charged against the appellant, when the learned trial judge, evidently of opinion that the case came within the rule res ipsa loquitur, told them that it was not necessary to do so, and that the testimony which they proposed to offer might be admissible in rebuttal, if the defendant should show it had exercised proper care. It offered no testimony, and on this appeal from the judgment on the verdict against it the important and main question is the correctness of the ruling of the trial judge that the plaintiffs were not required in the first instance, to prove more than that their father was killed by an electric shock in using the instrument which, with its connections, the appellant had furnished to him as one of its subscribers. This ruling was made on the authority of Alexander v. Nanticoke Light Co., 209 Pa. 571.

Electricity is the agent by which telephones become the means of communication from one point to another, and it may be conceded, as the appellant contends, that the current needed for their use is not a dangerous one. In this case it may be still further conceded that the current with which the deceased came in contact did not come from the exchange of the appellant; but at the same time it cannot be questioned that it came over one of its wires leading to the telephone of one of its patrons. Though this wire was intended to conduct only a harmless current the appellant was bound to know that it could become the conductor of a deadly one, and that such a current would pass over it, if it was not properly insulated and should come in contact with a wire heavily and dangerously charged. It was, therefore, as much the duty of the company to see that no such current should thus pass over its wires as it was to send only a harmless one from its own exchange. Its duty to its patrons was to exercise at all times the highest degree of care and vigilance to protect them from a dangerous electric current over its wires from any source. This is the implied undertaking of every telephone company, and in towns and cities threaded with dangerous electric wires the duty of the company is, by constant super-

vision of its wires, to prevent their becoming conductors of a dangerous current from others. When they do become conductors of it, there is reasonable evidence that there has been a neglect of duty, and the burden is cast upon the telephone company of showing that it had not been negligent. As it is not an insurer of its patrons against the danger of electric currents on its wires, the law will not hold it responsible for what it cannot help and for what may happen in spite of its exercise of the care and vigilance required of it; but when, as here, there is an accident, which in itself affords reasonable evidence of negligence, it must show why it should be relieved from liability. The rule upon this subject, as laid down in Scott v. London, etc., Docks Co., 3 Hurlst. & C. 596, is "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanations by the defendants, that the accident arose from want of care." This rule, reannounced in Oil Co. v. Penna. Torpedo Co., 190 Pa. 350, is not stretched in applying it to the present case.

By a number of assignments of error we are asked to say that the court erred in not directing a verdict for the defendant on the ground of the contributory negligence of the deceased. Counsel for appellant very properly state that the current of electricity necessary to operate a telephone will injure no one. The deceased knew this, and, of course, felt that his telephone was as harmless as it was useful, and there was no reason why he should have hesitated to take hold of the transmitter. He had been notified by the manager of the company that the connection of his telephone with the exchange would be established "at the earliest possible moment," and when he heard the noise coming from it, he evidently thought it had been connected, for he said, "I believe that is the 'phone." In then getting up, walking over to it and taking hold of the transmitter, he did just about what anybody else would have done under the circumstances; but because he happened to stand on a wet carpet and the transmitter was made of metal, it seems to be seriously contended that he was

guilty of negligence, and that the court ought to have so instructed the jury. If the current of electricity needed for telephones were dangerous, consideration might possibly be given to this proposition; but it cannot be so dignified under the facts in the present case. In submitting the question of the contributory negligence of the deceased to the jury, the appellant was given a chance to escape, of which the appellees might fairly have complained, if the finding had been against them. The assignments of the appellant relating to this feature of the case are all overruled.

One of the appellees, a daughter of the deceased, is a deaf mute, who was about seven years of age at the time of her father's death. In allowing her condition to be made known to the jury, the learned trial judge stated that, in view of it, the father might have been liable to contribute more to her support " than he ordinarily would." This remark was true as a matter of fact, and as a legal proposition, did no harm to the appellant, for the jury were distinctly instructed in language that they could not have misunderstood, that if the appellees were entitled to recover, the amount of the verdict would have to be limited to compensation to them for loss of what they could have expected from their father for their support and education while in their minority, during which period he would have been entitled to their earnings.

When the testimony of James Mullen, taken at a former trial of the case, was offered, objection was made that it had not been proven that proper effort had been made to secure the attendance of the absent witness. This was a matter for the court below, with the proof before it of the effort that had been made to subpoena the witness, and no error was committed in admitting the testimony. Of the assignments relating to the charge of the court and the refusal to affirm defendant's points, nothing need be said, except that they are all overruled.

If the verdict was excessive, it was for the court below to correct it. It is not so manifestly unjust as to call for our interference with it.

Judgment affirmed.