BERTHA G. CROZIER, Plaintiff, v. HAWKEYE STAGES, INCORPORATED, et al., Defendants.

Nos. 39920, 39929.

314

DECEMBER 13, 1929.

*Edwards, Longley, Ransier & Harris* and *Stuart S. Ball,* for plaintiff.

*Wenner & Mosier,* for defendants.

FAVILLE, J.—The Hawkeye Stages, Incorporated, is a corporation engaged in the transportation of passengers for hire over certain highways in the state of Iowa, by means of motor vehicles. Said defendant was duly authorized to operate such a motor vehicle between the cities of Waterloo and Ames. As

such motor vehicle carrier, said defendant procured from the defendant the Underwriters Service Corporation a liability insurance bond, as provided by statute, which said bond was filed with the board of railroad commissioners, as required by law. The plaintiff was a passenger on a motor bus operated by the said Hawkeye Stages, Incorporated, near the town of Hudson, and was injured, as the result of a collision between said bus and an automobile, which was being driven on a crossroad. The plaintiff's petition, in one count, seeks to recover from the said Hawkeye Stages, Incorporated, for negligence in the operation of said motor vehicle, five grounds of negligence being specified. In a separate count, negligence is pleaded generally. In another count of the petition, the plaintiff alleges that the board of railroad commissioners granted to the Hawkeye Stages, Incorporated, a certificate authorizing it to furnish public service upon certain highways in the state of Iowa, and that the Underwriters Service Corporation executed a liability insurance bond, under the statute, by the terms of which the said last-named defendant obligated itself to make compensation for injuries to persons resulting from the operation of the motor vehicles of the defendant Hawkeye Stages, Incorporated. Separate answers were filed. As before stated, at the close of plaintiff's evidence, the trial court directed a verdict in favor of the defendant Hawkeye Stages, Incorporated. The court instructed the jury that the plaintiff was entitled to recover against the defendant Underwriters Service Corporation, and submitted to the jury, as the only issue for their determination, the question of the amount of damages caused by the accident in question.

The evidence in behalf of the plaintiff disclosed that, on June 6, 1927, in company with a lady companion, she purchased a ticket for transportation on a motor bus operated by said Hawkeye Stages, Incorporated, from Waterloo to Marshalltown. She boarded said bus at the Russell-Lamson Hotel in Waterloo. She and her companion sat in the same seat, directly back of the driver. The lady accompanying her sat next to the window, and the plaintiff was on her right. The bus left at 3:10 in the afternoon. The accident occurred shortly after the bus left the town of Hudson. The plaintiff testified that, shortly after passing the town of Hudson, the bus came to a crossroad. She said:

"The two cars came together in a sidewise collision, not

directly across, and the driver of the bus turned the car sharply to the right, and it lurched on, and then overturned. * * * It overturned to the left, on the left-hand side. It didn't roll clear over. It flopped over, and laid on the left-hand side."

The plaintiff testified, on cross-examination:

"Q. How far was this automobile from the bus when you first observed it? A. I don't know that I could tell you how far it was from the bus. It seemed to be—it was a little distance from the corner which we were approaching,—I should say about as far distant from the corner as the bus was, which seemed to me like one good city block, perhaps. I can't judge much of distances when it is an open space, and nothing to gauge by. It was just after we passed a large building, which I assume would be the schoolhouse you referred to. There were windows on the bus at my left, and at the head of the bus. The glass was closed in the window next to us. I might have had a vision of the highway ahead of the bus, but I didn't look ahead. I was looking at the side, at the country. * * * Q. What I am after is, what did you see as to the operation of the car after you first saw it approaching the intersection? A. Well, it was continued toward the intersection at a quite rapid rate of speed. Q. Yes, —what about the operation of the bus from that time on? A. The bus continued at the same rate of speed, as far as I could judge, it was going when I first noticed the car. I didn't notice any diminution of speed or change of direction. Q. Now, you stated that there was an impact or collision between the automobile and the bus. What part of the automobile came into contact with the bus? A. I couldn't answer that question; I didn't actually see it. I felt the impact, and saw the flash of the car, and felt the jar; but I couldn't tell you which part of the car struck the bus, of my own knowledge. * * * Q. But you saw the car strike the bus, or the bus strike the car? A. I felt the impact of the two cars. I don't know which one struck. * * * A. I said the car struck. I don't know how to describe it exactly; they came together sidewise, instead of right-hand collision, across, right-angle collision. Q. Well, now, just where on the bus, or on what part of the bus, did the automobile strike sidewise? A. I don't know. * * * Q. I believe you stated the driver of the bus turned the bus to the right? A. Yes. Q. Was

that before the impact? A. The turning and the impact were so nearly simultaneous that I don't know which came first. * * * Q. You stated that the bus turned to the right,—the driver turned it,—how far to the right did the bus turn? A. So that it turned into the crossroad; turned from the road on which we were, into the crossroad, on the right. Q. Do you know whether it turned parallel with the crossroad, or even farther around? A. You mean whether it went directly into the crossroad? Q. When it turned, when the bus turned? A. Well, it seemed to me parallel; but I was not familiar with the road, or just what angle it might lie, so I couldn't answer that definitely.''

I. We first consider the question as to the ruling of the court in directing a verdict in favor of the defendant the Hawkeye Stages, Incorporated. It is the contention of the plaintiff  that she was entitled to go to the jury upon the question of the claimed negligence of the defendant Hawkeye Stages, Incorporated, in the manner of the operation of the motor bus at the time of the injury. The defendant Hawkeye Stages, Incorporated, is a motor vehicle carrier, operating under the provisions of Chapter 252-A1 of the Code of Iowa, 1927. As such motor vehicle carrier, it obtained from the board of railroad commissioners of this state a certificate authorizing it to operate motor vehicles upon certain described highways of the state, and said defendant was so engaged in said business at the time of the injury complained of. Said defendant was what is commonly known in the law as a common carrier of passengers for hire, and its common-law duties and liabilities are such as pertain to a common carrier of passengers. It also has certain statutory duties, which, however, are not involved in this case.

At this point, the question is whether or not, under the record, the plaintiff was entitled to go to the jury on the question of the alleged negligence of the said defendant Hawkeye Stages, Incorporated. It is a familiar and well established rule that a carrier of passengers is not an absolute insurer of the safety of the passengers, but is only liable for injuries which are caused by the negligence of the carrier in failing to exercise the proper degree of care, skill, and diligence for the safety of

the passengers. *Blumenthal v. Union Elec. Co.*, 129 Iowa 322; *Cronk v. Wabash R. Co.*, 123 Iowa 349.

The rule of *res ipsa loquitur* has been recognized as of peculiar application in actions for negligence against carriers of passengers. This rule is most frequently applied in cases involving the transportation of passengers where the circumstances attending the injury are of such a character that the accident complained of could not well have happened in the ordinary course of events without the defendant's being negligent; as, for example, in cases of railroads, where the accident appears to have been due to a defective roadbed or machinery, or fault in the operation of a train. In such cases, a plaintiff makes out a prima-facie case by showing the fact of the accident, and that it was of such a nature that it would not usually happen without negligence, and thereby throws upon the carrier the burden of showing its freedom from negligence with respect to the defect or fault which caused the accident. *Whittlesey v. Burlington, C. R. & N. R. Co.*, 121 Iowa 597, 602; *Fitch v. Mason City & C. L. Traction Co.*, 124 Iowa 665; *Mitchell v. Chicago, R. I. & P. R. Co.*, 138 Iowa 283, 286; *Dieckmann v. Chicago & N. W. R. Co.*, 145 Iowa 250; *Dorn v. Chicago, R. I. & P. R. Co.*, 154 Iowa 140; *Weber v. Chicago, R. I. & P. R. Co.*, 175 Iowa 358-365; *Monaghan v. Equitable Life Ins. Co.*, 184 Iowa 352; *Larrabee v. Des Moines Tent & Awning Co.*, 189 Iowa 319.

In the instant case, the plaintiff's evidence showed that the injury was caused by a collision between the motor bus in which she was riding and another automobile. The situation is analogous to one where an injury occurs on a railroad, due to a collision between trains on different railroads. The fact of the occurrence of the collision shows the cause of the injury, and, under the well recognized rule, places the burden upon the carrier to show its freedom from negligence in causing the collision. If, for example, plaintiff had been asleep at the time of the injury, and offered proof only tending to show that, while she was riding as a passenger on said motor bus, the bus left the highway and overturned, by reason of a collision, causing the injuries she suffered, this would have made a prima-facie case, requiring the defendant to offer proof tending to show that it was in the exercise of ordinary care at the time. The fact of a bus's turning over or colliding with another car, like a railroad train's

leaving the track or striking another train, is so contrary to the usual method of operation as to require the defendant, upon proof of such fact, to establish its freedom from negligence which caused the result. The rule has been frequently recognized in different courts, under facts somewhat similar to those in the instant case, involving collisions between a carrier of passengers and another instrumentality. *Housel v. Pacific Elec. R. Co.,* 167 Cal. 245 (139 Pac. 73, 51 L. R. A. [N. S.] 1105) ; *Kilgore v. Brown,* 90 Cal. App. 555 (266 Pac. 297) ; *Augustus v. Chicago, R. I. & P. R. Co.,* 153 Mo. App. 572 (134 S. W. 22) ; *Stauffer v. Metropolitan St. R. Co.,* 243 Mo. 305 (147 S. W. 1032) ; *Sloan v. Detroit United Railway,* 172 Mich. 68 (137 N. W. 691) ; *Smith v. Creve Coeur Drayage & Motor-Bus Co.,* 220 Mo. App. 1122 (296 S. W. 457) ; *Egan v. Old Colony St. R. Co.,* 195 Mass. 159 (80 N. E. 696) ; *Loudoun v. Eighth Ave. R. Co.,* 162 N. Y. 380 (56 N. E. 988) ; *Cox v. Scott,* 104 N. J. Law 371 (140 Atl. 390) ; *Plumb v. Richmond Light & R. Co.,* 233 N. Y. 285 (135 N. E. 504) ; *Minneapolis St. R. Co. v. Odegaard* (C. C. A. 8th Circuit), 182 Fed. 56.

The defendant carrier relies largely upon our holding in *Larrabee v. Des Moines Tent & Awning Co.,* 189 Iowa 319. Said action did not involve a carrier of passengers, but was for alleged negligence in the construction of a certain structure for seating a large group of people. We discussed the doctrine of *res ipsa loquitur* as applied to the facts of that case, and observed that such doctrine did not ordinarily apply unless it is made to appear that all the instrumentalities which would be likely to cause the accident were under the exclusive control and management of the defendant. This is true as a general rule, but it does not apply under the facts of this case, as to a carrier of passengers for hire. The important factor not to be overlooked in this case is the fact that the defendant Hawkeye Stages, Incorporated, is operating as a common carrier of passengers for hire, and is subject to the rules of law that pertain to such a carrier. Under the record in this case, the plaintiff made a prima-facie showing of negligence on the part of the defendant motor carrier. The court erred in directing a verdict for the defendant motor carrier.

In this connection, it is argued that the rule of *res ipsa*

*loquitur* is not applicable, because the plaintiff pleaded specific grounds of negligence.

In *Rauch v. Des Moines Elec. Co.*, 206 Iowa 309, we said:

"*Res ipsa loquitur* is asserted as an assistance to appellant's 'proof.' Inapplicability of this philosophy at once is evident, because general 'negligence' was not relied upon, but rather, specific allegations were enumerated. *Whitmore v. Herrick*, 205 Iowa 621. Had general 'negligence' been set forth in one count, and the definite in another, the situation would be different. When, on the other hand, particular charges are relied on, they must be proven. *Kelly v. Muscatine, B. & S. R. Co.*, 195 Iowa 17. See, also, *Federal Elec. Co. v. Taylor*, 19 Fed. (2d Series) 122."

In the instant case, we have the precise situation referred to in the *Rauch* case. The plaintiff pleaded her case in three counts. In one, she specified five specific grounds of negligence.  In a separate count, she pleaded that defendant Hawkeye Stages, Incorporated, is a common carrier, and was engaged in transporting plaintiff as a passenger. In said count, it is then alleged generally that a collision occurred, that plaintiff was injured, and that the injury "was caused wholly by the negligence of the defendant, Hawkeye Stages, Inc." The petition was not attacked. In this state of the pleadings, we are of the opinion that the *res ipsa loquitur* rule was available to plaintiff, under this count of her petition.

II. The statute requires that motor vehicle carriers shall obtain certificates from the board of railroad commissioners, authorizing them to operate motor vehicles upon the public highways of the state. They must also perform certain requirements. Section 5105-a26 provides as follows:

"No certificate shall be issued until and after the applicant shall have filed with the commission a liability insurance bond, in form to be approved by the commission, issued by some company authorized to do business in this state, in such penal sum as the commission may deem necessary to protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance bond shall bind the obligors thereunder to make compensation for

injuries to persons and loss of, or damage to, property resulting from the operation of such motor carrier. No other or additional bonds shall be required of any motor carrier by any city, town, or other agency of the state."

The defendant carrier in the instant case furnished a liability insurance bond, in accordance with said statute, executed by the defendant Underwriters Service Corporation. This was  a statutory bond, and the defendant Underwriters Service Corporation is bound thereunder according to the terms and provisions of said statute, which bound it "to make compensation for injuries to persons and loss of, or damage to, property resulting from the operation of such motor carrier." The trial court held that, under the evidence in this case, as a matter of law, said Underwriters Service Corporation was liable for the injuries to the plaintiff, and submitted to the jury only the question as to the amount of said damages. There can be no fair question, under the evidence, that the injury to the plaintiff resulted from "the operation of the motor carrier" (vehicle). We had this statute before us for consideration in the case of *Curtis v. Michaelson*, 206 Iowa 111, and said that the liability insurance bond required under the statute was one given to protect the interests of the public. We said:

"The legislative intent is to provide security for persons who might suffer personal injuries or damage to their property by reason of the operation of such motor busses."

The important question at this point is the construction of the terms of this statute. To put it concisely, the real question for determination is whether or not, under the terms of this statute, the insurer under such liability bond is liable for *any* injury that may result to a passenger in a motor vehicle operated by a motor carrier, whether such injury results from the negligence of the motor carrier or not. The statute is apparently not limited to passengers on said motor vehicle, but covers any injury to persons or loss of property resulting from the operation of such motor carrier. Obviously, the plaintiff in this action is entitled to avail himself of the protection afforded by this "liability insurance bond." Some question is made about the construction of the words "operation of such motor carrier."

Without going into the refinements of definitions, we are clearly of the opinion that the injury to the plaintiff in this case resulted from the "operation of the motor carrier" (vehicle), within the contemplation of the statute. The question then arises as to whether or not liability on the insurance bond becomes fixed merely by proof that the injury resulted from the operation of the motor vehicle, or was it incumbent upon the plaintiff to also prove that such injury resulted from the *negligent* operation of the motor vehicle? This is the difficult question in the case, and we have no precedent to guide us.

Construing the statute according to its terms and according to the evident intent and purpose of the legislature, we think it must be held that the provision of the statute applies only to injury or loss that results from the *negligent* operation of the motor vehicle. It would be a harsh and unreasonable rule that would hold the insurer liable on its bond for injury or loss that might occur to any person, resulting from the operation of such motor vehicle, where said injury or loss in no way or manner was the result of any negligent or improper operation of such motor vehicle. This would make the bond company an absolute insurer against *any* form of loss or injury that resulted from the operation of the motor vehicle, even though such loss or injury was in no way caused by any negligent or unskillful method in such operation. The statute must be construed in its entirety, and in view of the evident purpose and intention of the legislature. The law provided for a method by which motor vehicles could operate upon the public highways of the state under permission of the board of railroad commissioners. The statute places certain limitations and requirements about the method of the operation of such motor vehicles. It was obviously the thought of the legislature that operators of such motor vehicles, when obtaining certificates to operate upon the highways of the state, might not be able financially, in all events, to respond in damages to those who might suffer injury or loss of property by the negligent operation of such motor vehicles. The legislature, therefore, required, as a prerequisite to the granting of the certificate and the use of such highways by the motor vehicle carriers, that a liability insurance bond should be furnished for the benefit of the public, to indemnify anyone who might suffer loss or injury by reason of the operation of said motor vehicle

upon the public highways of the state. It surely cannot fairly be said that it was the intent and purpose of the legislature to make this liability insurance bond cover a loss for *any* injury that might result from the operation of such motor vehicle, when such loss or injury could not have been averted by the exercise of proper care and skill on the part of the motor carrier. In other words, while the statute refers to the bond as a liability insurance bond, and said bond is given to protect the public against loss or injury resulting from the operation of the motor vehicle, it certainly cannot be held that it was intended to insure the public against *any* loss or injury that might result from the operation of such motor vehicle, even though such operation was skillful and free from all negligence whatsoever. The purpose of the bond is to hold the insurance liability company for the very thing the motor carrier is liable for, and nothing else. If there could be no recovery against the motor carrier because no negligence was shown, then surely there could be no recovery against the bondsmen. In other words, the bond is required under the statute as a protection to the public for the damages *recoverable against the motor carrier*. It is an insurance of the motor carrier's *liability*, and *not* the creation of a distinct and separate liability wholly disconnected from the motor carrier's liability. It is properly designated by the statute as ''a liability insurance bond.'' What liability does it insure? It can only be intended to insure the liability of its principal, the motor carrier. If its principal is not liable, how can it be made liable? As we have seen, its principal could only be liable as a carrier of passengers for hire under the common law, or for the violation of some statutory provision, which is not involved in this case.

What we have herein said is not inconsistent with our holding in *Curtis v. Michaelson,* supra. In that case we held that an injured party might proceed directly against the company furnishing the motor carrier's bond, under this statute. While that is true, it does not follow, however, that a recovery may be had on the bond as an independent right, without a showing of acts on the part of the motor carrier for which *it* would be liable to the plaintiff. In other words, the bond is a *''liability insurance* bond,''* to insure to the public that for which the motor carrier could be made *liable.* Before the Underwriters Service Corporation could be held liable in the instant case, it was in-

cumbent upon plaintiff to show that her injury resulted from the negligent operation of the motor vehicle.

Under the statute, the measure of obligation under the liability insurance bond is defined as "damage * * * *resulting from* the operation of such motor carrier." The expression "resulting from" implies that the operation of the motor carrier must be the proximate cause of the damage or injury for which the bondsmen are liable. If a third party wrongfully, and without negligence on the part of the motor carrier, caused an injury to a passenger, such injury would not result *"from"* the operation of the motor carrier. It would result "from" the negligence of the third party. The operation of the motor carrier would, of course, be an incident of the accident, as the presence of the passenger would also be an incident; but the cause of the accident or injury would be the fault of the third party, and it could not be said that the damage resulted *from* the operation of the motor vehicle in such a case.

The court did not submit to the jury the question of negligence, but held that, as a matter of law, the Underwriters Service Corporation was liable, and submitted to the jury only the question of the amount of damages. This was error. As we have seen, the Underwriters Service Corporation could be liable only in the event that the Hawkeye Stages, Incorporated, was guilty of negligence. The question of negligence of the Hawkeye Stages, Incorporated, was a question for the jury. The court erred in holding the Underwriters Service Corporation liable as a matter of law. As a result, the case is—*Reversed on both appeals.*

All the justices concur in the discussion and result, except Grimm, J., who dissents as to the discussion on *res ipsa loquitur.*

GRIMM, J. (dissenting).—I cannot concur in all the discussion of the majority opinion upon the question of *res ipsa loquitur.* The doctrine of *res ipsa loquitur* is one which arose out of necessity. In certain cases it was permitted to create a mere inference, which stood until rebutted, but applied only when there was no other evidence on the subject. Literally speaking, the doctrine means, "The thing speaks for itself." All that is meant is that the circumstances involved in, or connected with,

an accident are of such an unusual character as to justify, *in the absence of any other evidence bearing on the subject,* the inference that the accident was due to the negligence of the one having possession or control of the article or thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation be given, the only fair and reasonable conclusion is that the accident was due to some omission of defendant's duty. The rule means that, whenever a thing which produced the injury is shown to have been under the management and control of the defendant, and the *occurrence is such as, in the ordinary course of events, does not happen,* if due care has been used, the fact of the happening of the accident creates the presumption that the accident and injury resulted from the negligence of the defendant. It cannot be said that the collision of two motor vehicles at an intersection is such that, in the ordinary course of events, it does not happen if due care has been used on the part of one of the parties. Such accident may be entirely the fault of *one* of the parties; in fact, it is a matter of common knowledge that motor vehicles having the right of way, as this bus had, are drawn into collisions or other accidents, without any fault whatever upon the part of the owner or driver thereof. The evidence in the case at bar tends very strongly to show that the accident was caused entirely by the negligent driving of the motor car which crashed into the bus. The said doctrine does not apply to a case of the kind at bar in the manner set out. This accident happened in broad daylight. The plaintiff was in a position to see, and did see, what was transpiring on the part of both motor vehicles for some period before, and up to the time of, and at the time of, the collision. The plaintiff testified fully on the subject. The evidence indicates quite strongly that the automobile driver caused the accident. There is in this case no occasion for adopting the extreme rule of necessity known as *res ipsa loquitur.* The rule should only be applied in the absence of any other evidence bearing upon the subject, and then only under the conditions recognized in law. *Central R. Co. v. Peluso,* 286 Fed. 661; 6 Words & Phrases (3d Ser.) 745—754; 45 Corpus Juris 1193, Section 768 *et seq.*

The doctrine arose out of the sympathetic instinct of the

court. It was applied in a peculiarly narrow class of cases, where the plaintiff was utterly without evidence; but it has progressed slowly but surely, by inches, until now the doctrine is being injected into conditions where it never belonged, and is being applied where and in a manner in which it was never intended to be used.