Wilbert S. Sutcliffe, Administrator, Substituted Plaintiff, Appellee, v. Fort Dodge Gas & Electric Company, Appellant.

No. 42598.

November 20, 1934.

Price & Burnquist, for appellant.

Breen & Breen and D. M. Kelleher, for appellee.

KINDIG, J.—This action to recover for personal injuries was brought originally by William Sutcliffe against the defendant-appellant, Fort Dodge Gas & Electric Company, a corporation. A gas heater exploded in a restaurant in Fort Dodge on February 16, 1933, at about 12:30 o'clock a. m. William Sutcliffe at the time was an employee in the restaurant. The explosion blew the front of the building into the street, and carried Sutcliffe with it. Because of the explosion, Sutcliffe was injured. He suffered great pain and agony because of his injuries, and, on October 16, 1933, probably died of cancer of the prostate, liver, and bones.

Before his death, William Sutcliffe commenced an action against the appellant to recover $15,000 for the personal injuries growing out of, and the medical, nursing, and hospital expense incident to, the explosion. Following the death of William Sutcliffe, Wilbert S. Sutcliffe was duly appointed the administrator of the estate. Whereupon, the administrator continued as the plaintiff in said suit, and now is the appellee on this appeal.

After a trial to a jury, a verdict was returned in favor of the appellee. In due time, the appellant filed its motion for a new trial, which was overruled, and judgment was entered on the verdict. The appellant appeals from both the judgment and the ruling on the motion.

I. · It is first argued by the appellant that it was entitled to a directed verdict at the close of the evidence because it did not furnish material for, or perform the labor involved in, the installation of the gas appliances located in the building at a point before the gas passed through the meter.

Not only does the appellant argue that it did not install this portion of the gas fixtures, but also that it did not manage or control the same. Therefore, it is argued by the appellant that it is not responsible for the gas explosion which occurred at a point in the appliances before the gas reached the meter. At this point, the appellant relies upon Florence Helm et al. v. Manufacturers Light & Heat Co., 86 W. Va. 628, 104 S. E. 59, 25 A. L. R. 240, where on page 244 appears the following:

"But an insuperable obstacle to recovery (in the case reported), upon the evidence adduced, is found in the fact that the alleged cause of the fracture of the fitting was the dislocation of the service pipe which the plaintiffs were bound to maintain. No duty of maintenance thereof rested upon the defendant."

Also it is said by the appellant that the following cases, by analogy or otherwise, sustain its contention at this juncture: Harter v. Colfax Electric Light & Power Co., 124 Iowa 500, local citation 504, 505, 100 N. W. 508; Duncan v. Fort Dodge Gas & Electric Co., 193 Iowa 1127, local citation 1131, 188 N. W. 865; Triplett v. Alabama Power Co., 213 Ala. 190, 104 So. 248; Okmulgee Gas Co. v. Kelly et al., 105 Okl. 189, 232 P. 428; Southern Indiana Gas Co. et al. v. Tyner, 49 Ind. App. 475, 97 N. E. 580; Pernick v. Central Union Gas Co., 228 N. Y. 594, 127 N. E. 920; Reid v. Westchester Lighting Co. et al., 236 N.Y. 322, 140 N. E. 712, 29 A. L. R. 1247; Schmeer v. Gas Light Co. of Syracuse, 147 N. Y. 529, 42 N. E. 202, 30 L. R. A. 653; 28 Corpus Juris 594, subdivision d of section 59; 12 Ruling Case Law, 909, section 49.

While it is argued by the appellant that it did not build, furnish, or install the gas fixtures in question, it is contended by the appellee, on the other hand, that as to whether that is true it is unnecessary to decide, because the appellant did inspect and control and have full charge of the gas appliances which leaked and caused the explosion. Without doubt the jury could find under the record that the appellant in the case at bar had control of, and access to, the gas appliances in question. In addition thereto, the jury could find that the appellant had full charge of such gas appliances and their inspection. As a matter of fact, immediately after the explosion, the appellant carried away to its place of business, and there kept, one of the appliances. Thereby the appellant indicated that it not only managed and controlled the appliances, but owned the same. The gas belonged to the appellant until it was sold through the meter to the consumer. Manning v. St. Paul Gaslight Co., 129 Minn. 55, 151 N. W. 423, L. R. A. 1915E, 1022, Ann. Cas. 1916E, 276. There it is said, reading on page 424 of 151 N. W.:

"Illuminating gas is a highly dangerous and destructive product when allowed to escape or to get beyond control. Defendant is engaged in the manufacture and distribution thereof, and in so doing is required to exercise a degree of care commensurate with the great danger likely to result from its escape. The gas belongs to defendant until sold and delivered through its meter in the consumer's building, and therefore defendant (depending upon the ownership or control of the pipes) should be responsible for its care until it is so measured and delivered. * * * Whether defendant owns the pipes in which its gas is confined or not is not important. * * *

They (the pipes) are not subject to the care or interference of any one but defendant."

By way of analogy, it is said in Roberts v. Pacific Gas & Electric Co., 102 Cal. App. 422, 283 P. 353, reading on page 356:

"It is ordinarily true that a company which neither owns nor controls the wires or appliances over which it merely transmits electric energy is not obliged to inspect the line, and will not be liable for injuries sustained by reason of defective appliances. (Citing cases.) * * * But when control, or even joint control, of an electric line is reserved and exercised as in the present case, the electric company will be liable for a lack of due care."

Again it was said in Daltry et al. v. Media Electric Light, Heat & Power Co., 208 Pa. 403, 57 A. 833, reading on page 836:

"That the company did not *construct* the line at its own expense cannot relieve it from the duty to exercise care in keeping it in proper condition and repair during the period the wire carried its electric current. The *ownership* of the wire cannot affect the company's liability for failure to observe this duty under the facts disclosed by the evidence in this case. When charged with its electricity, the wire was in the possession and control of the company so far as concerned its duty to keep it in repair and in proper condition and position to protect those who might come in contact with it." (Italics supplied.)

To the same effect see Fedorawicz v. Citizens Electric Illuminating Co., 246 Pa. 141, 92 A. 124; Blackburn v. Southwest Missouri Railway Co., 180 Mo. App. 548, 167 S. W. 457; Harris v. Eastern Wisconsin Railway & Light Co., 152 Wis. 627, 140 N. W. 288, 45 L. R. A. (N. S.) 1058; Clayton v. Enterprise Electric Co., 82 Or. 149, 161 P. 411; Hilson v. Pacific Gas & Electric Co., 131 Cal. App. 427, 21 P. (2d) 662; 9 Ruling Case Law 1205, section 16; 20 Corpus Juris 364, 365, section 49, subdivision d.

According to the record in the case at bar, the appellant had control of the gas appliances from which the gas escaped which caused the explosion. From time to time, these appliances were inspected by the appellant's employees. Immediately before the explosion, the jury could find, William Sutcliffe, while working in the restaurant, smelled gas, made a search for it, and found that it was coming from the basement. Apparently the gas meter was

located a few feet from the wall through which the gas main entered the basement. Coupled to the gas meter was a drip pipe, consisting of two parts, with a valve "in the middle of one of them". Connecting with the drip pipe was the gas pipe coming from the alley, through the basement wall. The purpose of the drip pipe was to permit drainage when artificial gas was used. When the appellant's employees drained the pipe before the explosion, the jury could find they used the drip pipe.

John Koll, who owned the building at the time of the explosion, purchased the same from John Arnett in 1908. These drip pipes were in the building at the time John Koll became the owner thereof. Neither the owner of the restaurant, nor the owner of the building, the jury could find, thereafter made any change whatever or in any way interfered with or controlled the drip pipes. Under the record, the jury could find that the drip pipes, as well as their inspection, were entirely under the control of the appellant. Immediately after the explosion, the drip pipe was found disconnected. It had served no purpose for a period of approximately two and one-half years, because the appellant changed from the use of artificial gas to the use of natural gas. The appellant claims that the piece of drip pipe fell from its connection after its disuse, and therefore the appellant further contends that gas escaped from the broken connection into the basement, and hence into the restaurant, where the explosion occurred. We need say no more than that a jury question is presented at this point. Manifestly the appellant, a jury could find, was bound to inspect and maintain the gas appliances in a reasonably safe condition. Neither George Clausen, who was the owner of the restaurant and a mere tenant in the building, nor William Sutcliffe, who was an employee of Clausen's at the time of the explosion, had any control whatever over the gas appliances, the jury could find. Furthermore, the jury could find that the explosion would not have occurred had the appellant kept the valve and the other draining apparatus properly closed and had it maintained the drip pipe in its proper place. Perhaps, after its disuse following the change of gas, the drip pipe, through insecure fastening or otherwise, may have become loosened, and therefore fell. During every month a meter reader, who was an employee of the appellant, called at the restaurant, and when there he went to the basement and saw the gas appliance while he read the meter.

Many drip pipes of the kind in question were installed in various places in Fort Dodge. All of them became useless after the dry or natural gas was supplied. Consequently we are presented with a situation which is at least analogous to the cited cases. Although the appellant may not have owned the gas appliances in question, it at least had full control over them. In that event, according to the cases above cited, the appellant would be liable for the explosion.

II. The appellee depends upon the principle of *res ipsa loquitur* to prove the appellant's negligence. As a matter of fact, in one count of his petition the appellee pleaded general negligence for the purpose of relying upon *res ipsa loquitur*, and in another he pleaded specific negligence. But before the case went to the jury, the appellee dismissed the count of his petition relating to specific negligence, and left remaining only the one having to do with general negligence and the *res ipsa loquitur* rule.

It is here contended by the appellant that it was error for the district court to submit the count relating to the *res ipsa loquitur* rule after the appellee had pleaded specific negligence. By pleading specific negligence, the appellant contends that the appellee waived his right to rely upon general negligence under the *res ipsa loquitur* rule. When pleading the specific negligence, the appellant contends that the appellee waived the general negligence, even though one was pleaded in one count and the other in another.

During our discussion in Whitmore v. Herrick, 205 Iowa 621, 218 N. W. 334, we said, among other things, that the rule relating to *res ipsa loquitur* has to do with the proof rather than with the pleadings; that is to say, the rule of *res ipsa loquitur* cannot be applied unless the pleadings are sufficient to warrant it. If the pleadings are sufficient for a basis to support the *res ipsa loquitur* rule, then such rule may be relied upon to meet the proof under the pleadings. So, as said in Whitmore v. Herrick, supra, in order to rely upon the principle of *res ipsa loquitur*, the pleadings must be broad enough to support a charge of negligence. Unless the pleadings contain a charge of negligence, they are not broad enough to support the principle known as *res ipsa loquitur*, which, as before stated, has to do with the proof rather than with the pleading itself. *Res ipsa loquitur*, in other words, is an inference which may arise in aid of the proof under proper facts and circumstances. Whitmore v. Herrick, supra.

While discussing the pleadings relating to negligence which might otherwise give rise to the *res ipsa loquitur* rule, we have said that a general allegation of negligence followed in the same count of the pleading by a specific allegation of negligence will amount to a waiver of the general allegations in favor of the specific. Whitmore v. Herrick, supra; Rauch v. Des Moines Electric Co., 206 Iowa 309, 218 N. W. 340; Orr v. Des Moines Electric Co., 207 Iowa 1149, 222 N. W. 560; Kelly v. Muscatine, Burlington & Southern Ry. Co., 195 Iowa 17, 191 N. W. 525. But when the general allegations of negligence supporting the *res ipsa loquitur* rule are in one count and the specific allegations of negligence are in another count of the pleading, a different situation arises. Rauch v. Des Moines Electric Co., supra. There we said, reading on page 313:

"Had general 'negligence' been set forth in one count and the definite (or specific negligence) in another (count of the same pleading), the situation would be different."

This pronouncement was, in effect, followed in Crozier v. Hawkeye Stages, 209 Iowa 313, local citation 320, 228 N. W. 320.

Upon this subject, it was said by the Supreme Court of Appeals of Virginia in Washington-Virginia Ry. Co. v. Bouknight, 113 Va. 696, 75 S. E. 1032, reading on page 1034, Ann. Cas. 1913E, 546:

" * * * In discussing the second question presented by the demurrer, the learned counsel for the defendant make the contention that the plaintiff, by alleging acts of affirmative negligence in the first seven counts of her declaration, thereby waived her right to rely upon the presumption of negligence arising from the derailment of the car; in other words, that counts charging affirmative negligence cannot be joined with counts in which the presumption of negligence is relied upon. The same contention was made and ably argued in Walters v. Seattle Railroad Co., 48 Wash. 233, 93 P. 419, 24 L. R. A. (N. S.) 793, but was overruled, the opinion of the court saying: 'This contention is not tenable.' "

Apparently there is much conflict among the authorities (see 79 A. L. R. annotations page 48) concerning the right of the pleader to rely upon *res ipsa loquitur* supported by allegations of general negligence followed by the allegation of specific negligence, but what we have said above, of course, is in relation to the rule in Iowa and states having a similar rule. Such Iowa rule, as above

explained, has become firmly established in this state. By way of caution, we here suggest that an opposing pleader may not, by a motion for a more specific statement, deprive another pleader of his right to plead general negligence in a count in support of the *res ipsa loquitur* rule. See Harvey v. Borg et al., 218 Iowa 1228, 257 N. W. 190. But the pleading of general negligence supporting the *res ipsa loquitur* rule must clearly indicate that such rule alone is relied upon. Otherwise, there would be inconsistency and the pleader filing the motion for a more specific statement might be deprived of his right to protect himself against surprise. If the pleading of general negligence is not so phrased as to exclude all negligence except that to be proven by the *res ipsa loquitur* rule, a motion for a more specific statement would be available.

Whether the district court in the case at bar would have been justified in submitting both counts of the petition to the jury, we do not now decide or suggest, because, as before indicated, the appellee dismissed the second count and left only the first count remaining. It was the count relating to the general negligence giving rise to the *res ipsa loquitur* rule that the court submitted to the jury. Furthermore, we do not decide or suggest whether the appellee could have been required to elect upon which count it desired to go to the jury. Those questions are not involved in the case at bar. We need to decide no more under the circumstances than that the appellee did not waive his plea of general negligence sustaining the *res ipsa loquitur* rule in count one by adding to his petition count two, in which he alleged specific grounds of negligence. Of course, as before said, had both the general and specific negligence been pleaded in one count, the pleading of the specific negligence would have amounted to a waiver of the pleading of the general negligence.

 III. But it is contended by the appellant that in no event did the facts give rise to the application of the *res ipsa loquitur* rule. That rule is generally applied where "all the instrumentalities which could likely cause the accident were under the exclusive control and management of the defendant, and that the accident was such as would not ordinarily occur if due care had been exercised in the control of such instrumentalities." Larrabee v. Des Moines Tent & Awning Co. et al., 189 Iowa 319, 178 N. W. 373. To the same effect see Orr v. Des Moines Electric Co., supra, local citation 1155; Crozier v. Hawkeye Stages, supra; Harvey v. Borg, supra; Rauch v. Des Moines Electric Co., supra; Davis v. Van Camp

Packing Co., 189 Iowa 775, 176 N. W. 382, 17 A. L. R. 649; Harter v. Colfax Electric Light & Power Co., 124 Iowa 500, 100 N. W. 508. To the same effect see Joyce v. Missouri & Kansas Telephone Co. (Mo. App.) 211 S. W. 900; Bergen v. Tulare County Power Co., 173 Cal. 709, 161 P. 269; Kay v. Metropolitan Street Railway Co., 163 N. Y. 447, 57 N. E. 751; Warren v. Missouri & Kansas Telephone Co., 196 Mo. App. 549, 196 S. W. 1030; Lancaster County v. Landis, 209 Pa. 514, 58 A. 1068; Denver Consolidated Electric Co. v. Lawrence, 31 Colo. 301, 73 P. 39; Delahunt et al. v. United Telephone & Telegraph Co., 215 Pa. 241, 64 A. 515, 114 Am. St. Rep. 958; Turner v. Southern Power Co. et al. 154 N. C. 131, 69 S. E. 767, 32 L. R. A. (N. S.) 848; City of Thomasville v. Jones, 17 Ga. App. 625, 87 S. E. 923.

Again it was said in Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, on page 418, 57 L. Ed. 815, Ann. Cas. 1914D, 905:

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well-considered judicial opinions."

So it is apparent that the rule of *res ipsa loquitur* applies to the facts in the case at bar. Here, as before indicated, the jury could find that the decedent, William Sutcliffe, had no control or management over the gas appliances in question. Also the jury could find that his employer, the owner of the restaurant, had neither the control nor the management of such appliances. The jury could further find that the appellant had the full control and management of these appliances. Likewise, that body could find that the appellant did control and manage the appliances. As before said, immediately after the explosion, the appellant took the drip pipe from the restaurant, the jury could find, and assumed the control and ownership thereof. Ordinarily the explosion, the jury could

find, would not have happened "if due care had been exercised in the control of (the gas appliances)."

Therefore, the district court properly submitted that issue to the jury, and the jury, after considering the appellant's evidence, were warranted in finding that the appellee proved negligence on the part of the appellant, and freedom from contributory negligence on the part of William Sutcliffe, the decedent. Those questions were proper issues for the jury.

IV. Finally, ·it is argued by the appellant that the appellee did not prove by substantial evidence that William Sutcliffe suffered damages because of the explosion.

There is evidence in the record supporting the proposition that William Sutcliffe, because of the explosion, was seriously injured; that he suffered severe pain, both mental and physical; that he was wholly disabled from performing his usual occupation; that he suffered loss of time; that he was compelled to employ physicians and surgeons, and "obtain treatment in a hospital". While it is true that William Sutcliffe was suffering from a cancerous condition, yet it is not clear just when that condition arose. Before the explosion, the man had worked steadily for many weeks, and, so far as appears, would have continued to work steadily for some time in the future. The explosion shoved him into the street, and he suffered surgical shock, great pain, and mental suffering. About three months after the explosion, the symptoms of cancer became definite, the jury could find. Sutcliffe did employ doctors and nurses, and he engaged hospital care. He did have doctor bills, nurse bills, and hospital bills. A verdict of $1,500 was returned by the jury. We cannot say that it was not sustained by the evidence.

Therefore, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, EVANS, ANDERSON, ALBERT, CLAUSSEN, KINTZINGER, and DONEGAN, JJ., concur.

MITCHELL, C. J., took no part.